This is a proceeding instituted in this court for the disbarment of Morris Oppenheim, an attorney and counselor, for conduct involving moral turpitude. Defendant was at all the times mentioned in the accusation one of the police judges of the city and county of San Francisco, and, as in the case ofSan Francisco Bar Assn. v. Sullivan, 185 Cal. 621, [198 P. 7], all the charges against him are for acts and conduct on his part with relation to matters coming before him as such police judge. Three separate specific charges against the accused are made by the accusation. The accused denied the truth of each charge. By order of the court, the evidence in support of and against the charges was taken by the chief justice, and the transcript of the evidence taken has received full consideration at the hands of each member of the court. *Page 76 
The charges are of the same general nature as those made against John J. Sullivan in the proceeding referred to above. In the opinion in that matter we sufficiently discussed the rules of law applicable, and it is not necessary to repeat that discussion here. In this matter, as in the Sullivan case, the only direct evidence of guilt of the accused of any of the specific offenses charged is that of C. Vincent Riccardi, whose credibility as a witness is fully discussed in the opinion in that case. It is unnecessary to repeat that discussion here, further than to say, as we substantially said there, that we can accept his testimony as true only in so far as it is substantially corroborated by other evidence. We had occasion in the Sullivan case to discuss the business of Peter P. McDonough and the intimate relations existing between him and the accused therein. The same sort of intimacy existed between him and the accused here, and all that is said in the opinion in that case about these matters is equally applicable here.
The specific charge mainly relied on is the first in order in the accusation, being with relation to the conduct of the accused in a matter pending before him as a committing magistrate, in which one George Imperiale was charged with the crime of manslaughter. The charge is that while this matter was so pending before him, the accused entered into a conspiracy and agreement with one Peter P. McDonough wherein and whereby it was understood and agreed that accused, as police judge, should make such orders in regard to the bail of Imperiale that the latter would be induced to discharge his then attorney, one John V. Filippini, and employ in his place C. Vincent Riccardi, and also to pay for attorney fees and his release from custody and for the dismissal of the case five hundred dollars, of which sum McDonough was to receive a part; that, in pursuance of such corrupt agreement, accused, on April 24, 1919, first made an order fixing the bail at five thousand dollars bond or two thousand five hundred dollars cash, and subsequently on the same day made an order holding Imperiale without bail, thus inducing Imperiale to discharge Filippini from his employment and to employ Riccardi in his place, and that then accused made a third order, fixing the bail at one thousand dollars, which amount was furnished by McDonough, and Imperiale thereupon released; and that on *Page 77 
or about May 23, 1919, the case was finally dismissed; and that the sum of five hundred dollars was paid by Imperiale for attorney fees and for his release, and for the dismissal of the case, of which sum McDonough received two hundred dollars. There is no claim either in the accusation or the evidence that accused was to receive or did receive any money in this matter.
Imperiale, who was engaged in the business of running an auto stage or truck, had, in operating his car, run into and killed a child. The charge of manslaughter was based upon his alleged negligence in this matter. In so far as the dismissal of the charge by accused is concerned, it is not claimed that the accused was not fully justified in his action by the facts. No effort was made by the accuser to show what an investigation of the facts disclosed. Mr. George B. Keane, an attorney employed by the parents of the dead child, testified that he fully investigated the facts, and concluded that there was no case against Imperiale. It is undisputed that in open court he so stated to the accused judge and asked that the matter be dismissed. In so far as the record shows, there was no probable cause shown for believing Imperiale to be guilty of the crime with which he was charged, and the dismissal was proper.
It is solely in connection with the matter of the bail of Imperiale that anything improper appears. Imperiale, an ignorant foreigner, was in custody on the charge of manslaughter, having been arrested the night before. Riccardi had such information as to lead him to the conclusion that he had some property and sufficient resources to enable him to pay a large amount of money to gain his liberty. Here was a fertile field for development in the eyes of Riccardi. An intervening obstacle to such development was the presence in the case of Mr. John V. Filippini as the attorney of Imperiale. Mr. Filippini was an attorney at law of good repute, without much police court or criminal practice experience, who as a lawyer had previously done some business for Imperiale and had his confidence. In consequence of this he had been engaged to appear for him in this matter, and was, with Mrs. Imperiale, in and about the Hall of Justice and the courtroom of accused on the morning of April 24th, when Imperiale was first brought into court to answer to the charge, engaged in an effort to obtain the release of Imperiale on bail. It was considered *Page 78 
by Riccardi to be necessary to exclude Filippini from the case and to obtain his own employment in his place. The plan adopted to accomplish this was to bring Imperiale and his wife and Filippini to a conclusion that Filippini could not obtain an order for such release on bail, or other favorable action in the case, and that Riccardi could obtain his release at once and eventually a dismissal of the case.
There can be no doubt that Imperiale and his wife and Filippini were prevailed upon to believe that Filippini could do nothing for Imperiale in that court, and that with the assent of Imperiale, Filippini withdrew from the case, and Riccardi took charge. Except for the continued representations and insinuations by Riccardi as to his ability to accomplish results and the lack of knowledge of Filippini as to how things must be done in order to obtain favorable results in that court, the patent consideration leading the parties to the conclusion that Filippini could do nothing was certain information given them as to an alleged change made by the accused in the matter of the bail. It is the alleged willful participation by the accused with Riccardi in this matter, as well as in the original fixing of bail, that is mainly relied on by the accuser.
Riccardi's story is, in brief, substantially as follows: All his dealings in the matter were with McDonough, and at no time did he speak to the accused about the case. Before court convened on the morning of April 24, 1919, he went to McDonough's place of business and acquainted him with the prospect of mutual gain in the Imperiale case in the event that he was employed as attorney in place of Filippini. McDonough agreed to help and Riccardi divulged his plan, which was to have the judge fix the bail at so high a figure as to make it impossible for Filippini to obtain it. McDonough said he would communicate with the judge at once. Riccardi went back to the courtroom, arriving there before court was convened. After the accused took his place on the bench for the disposition of the business of the day's calendar, application was made by Filippini for the fixing of bail in the Imperiale case. The judge fixed it at five thousand dollars bond or two thousand five hundred dollars cash. Filippini left the courtroom saying that he would endeavor to obtain it. Riccardi *Page 79 
thereupon went to McDonough again and told him that Filippini would probably get the required bond, and suggested that he have the accused raise the bail or refuse bail altogether. McDonough said he would do this. Riccardi went back to the courtroom a little later. Court had adjourned and the accused had left the courtroom. Imperiale and the other prisoners were still in the dock in the courtroom. He, Riccardi, says that he was informed by the clerk of the court that an order of "no bail" had been made. It was at this stage that Filippini withdrew from the case and Riccardi became attorney for Imperiale. He then went back to McDonough's place of business, in company with Mrs. Imperiale, and sought an order fixing the bail at one thousand dollars cash. McDonough went into a back room and came back with such an order signed by the accused. He heard the voice of accused speaking in such back room. He procured one thousand dollars from McDonough to deposit with the bond and warrant clerk, and went to the office of such clerk with the money and the order fixing bail, there deposited the money and the order, and received an order directed to the prison-keeper at the city prison for the release of Imperiale. He went back to the courtroom with this order, and showed it to Filippini, who was still there. The prisoner had in the meantime been taken to the city prison. The order for release was taken to the city prison and delivered to the officer in charge, and Imperiale was discharged from custody at 11:55 A. M.
This story is absolutely uncorroborated in so far as any competent evidence directly implicating the accused is concerned. Moreover, in certain essential details it is opposed, in our opinion, to a clear preponderance of the testimony, altogether regardless of the denials under oath of both accused and McDonough. The latter denies that he had anything whatever to do with the case, beyond furnishing on application, in the course of his business, the money to be deposited as bail, and says he never communicated with the accused in relation to the case. The accused testified that McDonough never communicated with him about the case, and denied that he ever made any "no bail order" or said anything about such an order to anyone. He further testified that having first fixed the cash *Page 80 
bail at two thousand five hundred dollars on the statement of the arresting officer, he reduced it to one thousand dollars,before leaving the courtroom, his best recollection being that he so reduced it on the application of Mr. N.C. Coghlan, who came into the case by arrangement with Riccardi.
In so far as appears, except for Riccardi's testimony there is nothing to suggest even a suspicion of wrongdoing in the matter of the original fixing of bail. When the application was made by Mr. Filippini, the accused said he would have to wait for the arresting officer's statement. When the officer arrived, he told the accused that the case was a serious one, of deliberately running down a little boy and killing him. He also said something about previous negligent driving by Imperiale. The accused then made the order, and when Filippini protested and said it should be reduced to one thousand dollars, somewhat impatiently said the order had been made and would stand. This is, in substance, the testimony of Mr. Filippini. To us, in view of the seriousness of the charge and the statement of the arresting officer, the amount so fixed does not appear excessive — certainly not so excessive as to suggest improper motive. Much is made of the fact that on cross-examination the accused could not remember ever having fixed so high an amount of bail in a case of involuntary manslaughter, and that he admitted that in the ordinary case of this character, where generally the party charged was the employee of some person of known responsibility, the bail was fixed at a sum which appears to us absurdly low. But here it is not disputed that neither Mr. Filippini nor Imperiale was known to the accused, and, according to Mr. Filippini's testimony, the officer's statement was such as to make the matter seem very serious in so far as the defendant therein was concerned.
As to the alleged subsequent order of "no bail" there is no competent evidence whatever. Of course such an order would be absolutely without warrant in law in any but a capital case, and if there were any competent evidence showing the making of such an order by accused, or the willful doing of anything for the purpose of making Filippini believe that such an order had been made, it would constitute most substantial corroboration of Riccardi's *Page 81 
story. There is no record of any such order, and no one testified to having heard the accused make either any such order, or any statement designed to convey the idea that such an order had been or would be made. The only possible foundation for any claim that the accused made any such order or statement is a statement made by the clerk of the court (since deceased) to Mr. Filippini when, in company with Riccardi and Mrs. Imperiale, he returned to the courtroom after court had adjourned and the judge had departed, and while the matter of his withdrawal was still unsettled. Mr. Filippini testified substantially that the clerk then informed him that the accused had made an order of "no bail," which was "the last straw," and it was at once concluded that he could do nothing for Imperiale, and he withdrew. We have no doubt of the truth of Mr. Filippini's testimony, and must accept it as an established fact in the case that the clerk of the court so stated to him. In view of certain insinuations in the course of the proceeding before us as to his attitude and testimony, we feel that it is due him to say that in our opinion there was nothing in his conduct in this very disagreeable episode in his professional career to reflect unfavorably in the slightest degree upon his character, and that his testimony throughout appears to us to be that of a fair and intelligent witness, sincerely endeavoring to state the whole truth. This statement, however, of the clerk to Filippini, and, as Riccardi claims, to him, was admitted solely for the purpose of showing the influences directly used upon Filippini and Imperiale to bring about Filippini's withdrawal. Of course as against the accused, this testimony as to what the clerk said that the accused said was incompetent to show that the accused in fact said it, and objection was duly made to its being considered for any such purpose. Unfortunately the clerk died without having testified in any of the investigations relative to the matter before us. We have no disposition to needlessly say anything unfavorably reflecting upon his memory, especially in view of his inability to reiterate, explain, or deny, but it is obvious that he may have made this statement to Filippini without having any direction or information from the accused, and for the very purpose of assisting Riccardi in his effort to obtain Filippini's withdrawal. *Page 82 
As the case now stands before us, such a theory is as probable as the theory implicating the accused. Strange as it may seem, the undisputed evidence is that the clerk of this court kept no record of orders relative to bail, and was not expected to keep any such record, even though the same were made in open court. If this be true there was no occasion for the judge to acquaint him with the fact of any such order. Then, too, the discussion hereinafter contained as to the proof relative to the final order fixing the bail at one thousand dollars indicates that such order was made before the judge left the courtroom. Regardless of all this, however, under most elementary rules, evidence of this statement of the clerk was inadmissible to show the making of an order or statement by the accused.
It is, however, in respect to the final order on bail, the order fixing the bail at one thousand dollars cash, that the story of Riccardi is opposed to the clear preponderance of the evidence. This was the order said by him to be madeafter Filippini's withdrawal and his own employment, andbecause of such change in attorneys. It is the testimony of all that this change in attorneys was not consented to until after court had adjourned for the day and the accused had left the courtroom. To obtain a reduction of the bail at that stage, it is admitted that it was essential to obtain an order fixing the bail at the reduced sum, signed by the judge, which, when deposited in the office of the bond and warrant clerk with the amount of bail so fixed, would authorize that officer to issue an order of release. Such an order, we have seen, Riccardi testified he obtained at McDonough's place of business. No such order has been produced. Furthermore, no one, except Riccardi, testified that he ever saw any such order. Mrs. Imperiale, who accompanied Riccardi to McDonough's place of business, would not testify that she saw or was told of any such order. In passing it may be said that Riccardi's visit to McDonough's place at this stage is entirely explainable upon the theory that it was for the purpose of securing the one thousand dollars to deposit as cash bail. Filippini testified that he was not shown any such order. There is absolutely no scrap of affirmative evidence, except that given by Riccardi, to the effect that any such signed order ever was in existence. And in so far as the official record evidence *Page 83 
goes, it is opposed to the theory that there was any signed order fixing bail, and also opposed to the theory that the reduction to one thousand dollars was made after the adjournment of court, and Filippini's withdrawal from the case. The uncontradicted evidence of many witnesses is to the effect that there was a difference in the form of the order of release issued by the bond and warrant clerk, between those issued when the amount of bail was evidenced by a signed order of the judge, filed in such office, and those issued when there was no such order, and it was stated at the office by the party depositing the bail that the amount had been fixed in open court, without a signed order. In the latter class it was the uniform custom to accept the statement of the party as to the amount and to issue the order of release specifying the amount of the deposit, in view of the fact that the prison record showed the amount fixed in open court, if it was so fixed without a signed order, and if the fact of an order in accord with the representation stated and shown in the order of release did not appear in the prison record, the order of release would not be honored. If, however, there was a signed order fixing bail, which might be made out of as well as in court, and of which, consequently, there would be no prison record, it was the uniform custom to stamp with a rubber stamp, in one corner of the order of release, the words "This bail has been fixed at above sum by order of __________, Judge of Police Court, No. _____," filling in the blanks with the name of the judge and the number of his department. The order of release in this case was produced in evidence, and is without thesestamped words, showing, therefore, if the uniform custom was followed, as we may assume, that it was issued upon the representation to the bond and warrant clerk that an order had been made in open court, and that it was not issued upon an order signed by the accused. In addition to this we have the city prison register in evidence, together with the testimony of Officer Norman, a prison-keeper, who himself made the entry of one thousand dollars in the appropriate column thereof relative to Imperiale on that day from the sheet returned to him by the court bailiff with the prisoners still in custody, including Imperiale, when such bailiff returned such prisoners to the city prison after the adjournment *Page 84 
of court. These prisoners had been so returned when Riccardi went back into the courtroom, after his visit to McDonough's office to obtain, as he said, the order fixing bail. The testimony of Officer Norman was clear and convincing, and, with his entry in the register, shows that when Imperiale was returned to the city prison that day, the court sheet returned with him showed a notation by the bailiff of the fact of his admission to bail in the sum of one thousand dollars cash. Officer Bates, the bailiff of the court, testified that he heard the accused first fix the bail at two thousand five hundred dollars cash, and that later, before leaving the bench, he told him to make the bail one thousand dollars cash. He further testified that he saw Mr. Coghlan go up to the bench and speak to the judge before this reduction. In consequence of this direction, in making notes on his daily list of prisoners at the close of court, he made a note of the fact that the bail had been so fixed, and it was this sheet returned to the prison with the prisoners from which the prison record was made. This notation, so far as appears, was the only record made of any order fixing bail in the Imperiale case. It is difficult to understand the reason for the looseness of the practice apparently prevailing in this department in the matter of bail orders made in open court, a practice entirely without sanction in law, but the evidence is undisputed that such "orders" were frequently made by orally notifying the bailiff of the amount, and the bailiff was expected to make the record thereof by noting the amount on his daily sheet, for delivery to the prison authorities. The judge sometimes made a note on his personal docket and sometimes made no note. In this matter no entry at all appears on his docket. He explains this by saying that he made his entries for the information of the bailiff in filling out his sheet for the prison authorities, and that if the bailiff was personally notified by him, there was no necessity for such an entry. Mr. Coghlan has a very dim recollection that while court was in session that morning he, as an attorney acting on behalf of Imperiale, requested a reduction of bail to one thousand dollars, but his recollection is confessedly so dim as not to assist materially. Just what prompted the reduction of two thousand five hundred dollars to one thousand dollars by the accused *Page 85 
does not satisfactorily appear to us, except that there is nothing to our minds satisfactorily establishing any improper influence operating on the accused in so doing, but the clear preponderance of evidence, excluding altogether from consideration the testimony of the accused and McDonough, and accepting, as we do, everything testified to by Mr. Filippini to be true, is to the effect that there was no signed order fixing bail, and that the final order fixing bail at one thousand dollars cash was made before the judge left the courtroom and before Filippini had withdrawn from the case. This being the situation, the case necessarily fails for want of proof in so far as the accused is concerned, both as to the theory of a no-bail order for the purpose of accomplishing the withdrawal of Filippini, and the reduction to one thousand dollars, as soon as Riccardi was employed. It is suggested that there was an admission of wrongdoing on the part of accused in an interview between him and Riccardi in the presence of certain newspaper men, but we do not so construe the conduct and words of the accused, as testified to by Mr. Warner, one of the newspaper men. We have discussed the evidence in relation to this specific charge at considerable length in view of the fact that it is the charge mainly relied on. [1] We are satisfied that it may not fairly be held that the charge is sufficiently sustained by proof to warrant us in finding the accused guilty thereon.
The two remaining charges are that accused in each of two matters pending before him as a committing magistrate, one being the case of L. Ysussi, charged with assault with intent to commit murder, and the other being the case of G. Pasquale, charged with assault with intent to commit rape, agreed to receive, and did receive, a bribe of one hundred dollars from Peter P. McDonough upon the corrupt understanding and agreement that he should thereby be corruptly and unlawfully influenced in the decision of the case, and that he was thereby corruptly and unlawfully influenced to dismiss, and did dismiss, each of said cases corruptly and unlawfully. As to both these charges, the only direct evidence of guilt on the part of accused is that of Riccardi, the attorney for the defendant in each case. He testified as to an arrangement in each case with McDonough, to whom he agreed to pay one hundred *Page 86 
dollars to obtain a dismissal. He said substantially that McDonough said the amount was so small he would give it all to the judge. The cases were dismissed on different dates. Upon the dismissal of each case he paid the stipulated one hundred dollars to McDonough in his place of business. Accused was present on each occasion. As each payment was made McDonough delivered the money to the accused, who accepted it. So runs Riccardi's story. It is absolutely denied in all respects by both accused and McDonough. There is no such corroboration of Riccardi's evidence to be found in the record of these matters before the accused and his conduct as a magistrate with relation thereto, which was the only corroboration attempted, as in any degree to add to the weight of such evidence in so far as it purported to sustain the specific charge made. As to the Pasquale case, the assistant district attorney, Mr. W.P. Caubu, testified substantially that he stated to accused in open court that it was not a proper case for holding for trial in the superior court and consented to a dismissal, and a reading of the evidence introduced before the accused does not satisfy us that he was in error in so recommending. The evidence in the Ysussi case was not such as to make it clear to us that the defendant should have been held for trial. As to each of these specific charges we have, in the last analysis, only Riccardi's uncorroborated story, and it produces no measure of conviction in our minds. Therefore, each of these charges must fail in this judicial proceeding for want of proof.
We desire to say that we fully appreciate the motive of the Bar Association in instituting this prosecution, as well as that in the Sullivan case, and the courteous and able assistance given us on the trials by the committee conducting it. We are fully aware that nothing but a most commendable desire to rid the bar of members believed by the members of the association to be unworthy prompted the making of the charges, and it may well be that their reasons for their belief were well based. [2] But certainly charges of specific misconduct on the part of a member of the bar can be sustained by a court only upon satisfactory proof of the particular misconduct alleged, and that proof is, to our minds, wanting here. *Page 87 
The order to show cause is discharged and the proceeding dismissed.
Shaw, J., Wilbur, J., and Lennon, J., concurred.
Olney, J., and Sloane, J., dissented.