[Crim. No. 3493.  In Bank.—May 16, 1932.]

In the Matter of the Application of GEORGE L. HALCK for a Writ of Habeas Corpus.

Julian D. Cohn, Louis E. Goodman, Goldman & Altman, Louis H. Brownstone, Willard L. Ellis and Arnold C. Lackenbach for Petitioner.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

PRESTON, J.—Petition for writ of *habeas corpus.*

Petitioner, a personal property broker, engaged in the business of loaning or advancing money in sums exceeding $300, and taking as security therefor a chattel mortgage, bill of sale or other obligation or contract involving the forfeiture of rights in or to automobiles and other motor vehicles, the use or possession of which is retained by the borrower, was convicted in the municipal court of the crime of misdemeanor, to wit: Violation of section 7 of the Personal Property Brokers Act of this state (Stats. 1931, p. 558), because of his failure to apply for and secure a license from the commissioner of corporations of this state as thereby required.

Section 435 of the Penal Code makes the infraction of a statute of this type a misdemeanor. He now seeks release through this *habeas corpus* proceeding.

The title of said act of 1931 is as follows: "An act to amend sections 2, 3 and 4 of, and to add sections 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16 to, an act entitled 'An act to define personal property brokers and regulate their charges and business,' approved April 16, 1909, as amended, relating to charges of personal property brokers, and the licensing of such brokers." This legislation, as the title implies, engrafts new provisions upon the statute of 1909 (Stats. 1909, p. 969) as amended in 1911 (Stats. 1911, p. 978). How much of this former statute remains, by reason of the enactment of what is commonly known as the Usury Law (Stats. 1919, p. lxxxiii), is a debatable question, but concededly section 1 of the old act, which defines a personal property broker, remains unchanged and that is sufficient for the purposes of this case, as will hereinafter appear. Petitioner, however, is only interested in an adjudication that the sections added in 1931, 7 to 16, inclusive, are unconstitutional and void.

This new legislation of 1931 may be characterized as having a twofold object: First, to require all personal property brokers, as defined in section 1 of the act of 1909, to obtain a license and submit to rather stringent regulation by the corporation commissioner and, second, to permit a certain group of this class to charge upon loans of $300 and less a greater rate of interest than the legal rate, to wit: A rate of three and one-half per cent per month, which shall be in lieu of all other charges by the lender such as "insuring or examining the security or property", "drawing, executing or filing of papers" or any other services. A brief description of this legislation may not be amiss.

The Personal Property Brokers Act of 1909, *supra,* as amended in 1911, *supra,* was revamped, first by allowing section 1 thereof to remain unchanged, as above noted; next, by taking sections 2 and 3, which fixed the charges of all such brokers at two per cent per month (which interest was to cover also all fees and charges properly payable by the borrower) and excepting from the general class a group of lenders of sums in the amount of $300 or less, allowing them to charge three and one-half per cent per month, without mentioning what the remainder of the class might charge for

their loans, thus leaving them without regulation or else under the Usury Law. Section 4, which affords a remedy to the borrower for overcharges by the lender, was recast but whether or not it applies to all brokers seems doubtful. Sections 5 and 6 were allowed to remain as originally enacted. There were then engrafted upon this old legislation new sections, numbered from 7 to 16, inclusive, designed to place all personal property brokers of the class defined in section 1 under the supervision of the corporation commissioner, requiring them to procure a license, to pay certain fees for investigation, to pay an annual license charge and to post a fidelity or indemnity bond and also to submit to certain rather drastic inquisitorial supervision. It is against these latter sections that this petitioner directs his attacks.

His first objection is that the title is insufficient under article IV, section 24, of the Constitution. We see no merit in this position. The title authorizes the regulation of the charges and business of all personal property brokers. The body of the act plainly does no more than this. The act must be administered by some executive authority and it is not necessary that the corporation commissioner be named as such authority in the title. A topical index of the contents of the act is not required; it is only a reasonably accurate reference to the subject covered by the legislation that is necessary. Some of the main cases declaring this rule are: *McClure* v. *Riley,* 198 Cal. 23 [243 Pac. 429]; *Estate of Wellings,* 192 Cal. 506 [221 Pac. 628]; *Heron* v. *Riley,* 209 Cal. 507 [289 Pac. 160].

Petitioner's next claim is that the act confers upon the corporation commissioner ''arbitrary and unguided discretion''. In this behalf the following language of section 10 is complained of: ''Upon the filing of such application and the approval of such bond and the payment of such fees, the commissioner shall, if he finds the financial responsibility, experience, character and general fitness of the applicant . . . are such as to command the confidence of the community and to warrant belief that the business proposed to be conducted will be operated honestly, fairly and efficiently within the purpose of this act, the commissioner shall thereupon issue and deliver a license . . . ''

This means no more than that the commissioner may decline to license a person or entity if, on the showing made,

there is a reasonable ground for the conclusion that the applicant would not operate his business honestly, fairly or efficiently. This confers no arbitrary power. If the commissioner acts to the prejudice of an applicant, capriciously, arbitrarily or solely without basis of right, his act may be supervised and controlled by the courts. The language complained of means no more than similar language construed in the following cases: *Riley* v. *Chambers*, 181 Cal. 589 [8 A. L. R. 418, 185 Pac. 855]; *Tarpey* v. *McClure*, 190 Cal. 593 [213 Pac. 983]; *People* v. *Globe Grain & Mill. Co.*, 211 Cal. 121 [294 Pac. 3]; *Hall* v. *Geiger-Jones*, 242 U. S. 539 [Ann. Cas. 1917C, 643, L. R. A. 1917F, 514, 61 L. Ed. 480, 37 Sup. Ct. Rep. 217].

█ The next assault is founded upon the assertion that the regulation is so severe as to be prohibitive. The basis for this claim is the above provision, together with the provisions of section 8, which require payment of an annual license fee of $250 and the further payment of $100 as a preliminary fee for investigation, and the provisions of section 13, authorizing a charge of $15 per day by the commissioner or $10 per day by a deputy or other employee of the commissioner, for the time such officer shall necessarily be absent from his office for the purpose of examination, audit or investigation. The power to make further regulations is also conferred by section 15 of the act, which reads as follows: "The commissioner shall establish such rules and regulations as he may deem reasonable or necessary for the execution of the provisions of this act."

These provisions are indeed very stringent, but in the absence of facts of which we may take judicial notice, showing such regulation to be unwarranted and arbitrary to the point of denial of a constitutional right, we are forced to assume that the legislature made the proper investigation and ascertained facts justifying these provisions. Personal property brokers seem generally to be the subject of rather severe regulation in practically every jurisdiction of the country; the policy also seems to be, as here, to require this class of our citizens to defray the expense of this regulation.

█ The contention is also made that it is beyond the power of the corporation commissioner to receive authority from the legislature to administer this legislation. We see no basis for this contention. The regulation of personal

property brokers is not wholly foreign to the subject covered by the Corporate Securities Act. Besides, nothing is pointed out that would forbid the amendment of this act to cover personal property brokers. It must follow then that the legislature is clothed with power, in its discretion, to add these duties to a public officer or board already in existence by special independent enactment. And, where so lawfully added, the power of such officer or board to adopt reasonable regulations for its enforcement is a necessary corollary. (*In re Potter,* 164 Cal. 735 [130 Pac. 721]; *People* v. *Kuder,* 93 Cal. App. 42 [269 Pac. 198, 630].)

■ The next contention is that these provisions are unconstitutional in that they discriminate and are not uniform in their operation. (Art. I, secs. 11 and 21, Const.) This contention is predicated largely upon the fact that sections 2 and 3 of the act, as amended in 1931, authorize a certain group or division of personal property brokers to charge three and one-half per cent per month on sums loaned of $300 or less, whereas other personal property brokers of the general class are denied this privilege. In this respect, this court has already held as follows: "Section 11 of article I of the Constitution declares that 'all laws of a general nature shall have a uniform operation'. Section 21 of the article forbids the granting of special privileges or immunities to any citizen or class of citizens, which, upon the same terms, shall not be given to all. Under the rules now well established in this state, we think it is clear that this statute does not controvert these provisions. It is not a violation thereof for the legislature to enact laws applying to persons throughout the state, but only to those of a specified class, provided the distinctions which mark the class are those which reasonably arise out of the nature of things and distinguish them from others not embraced within it in such a manner that the peculiar legislation is not arbitrary or unreasonable." (*In re Stephan,* 170 Cal. 48, 50 [Ann. Cas. 1916E, 617, 148 Pac. 196].)

Therefore, if it be admitted that personal property brokers are a proper class for legislative regulation, it must follow that petitioner here is not in a position to complain, even though said sections are discriminatory in their operation. If these sections are void, then all personal property brokers are in the same class and the regulations complained of

would operate alike upon brokers lending in sums of $300 or under, and if said sections are valid and constitute a lawful segregation from the major class, then it must follow that petitioner is uninjured, for he may elect without restraint or additional outlay to come under the favored provisions by extending his business to cover loans of $300 or less. The act purports to regulate all classes of brokers on the same terms and conditions and any member of either class may at will, and without burden, join the other. The smaller loan broker may be favored, but, if so, it is not at the expense or to the injury of the larger class. The license fee is not the price of the privilege to charge the three and one-half per cent interest rate; this privilege is sought to be founded upon economic reasons.

We have disposed of the principal points raised by petitioner and, finding each of them to be without merit, the writ is discharged and the petitioner is remanded to custody.

Shenk, J., Waste, C. J., and Curtis, J., concurred.