[S. F. No. 16202.   In Bank.—June 29, 1939.]

PETER P. McDONOUGH et al., Petitioners, v. REX B. GOODCELL, as Insurance Commissioner, etc., Respondent.

Leon Samuels and Charles H. Brennan for Petitioners.

U. S. Webb, Attorney-General, Earl Warren, Attorney-General, Neil Cunningham, Deputy Attorney-General, and Walter K. Olds, Deputy Attorney-General, for Respondents.

THE COURT.—This is an application for the writ of *mandamus* to compel the respondent Insurance Commissioner to issue to the petitioners a permit to conduct a bail bond business in San Francisco.

The petitioners are copartners and as such had for many years conducted a bail bond business in San Francisco. In 1937 the legislature enacted the Bail Bond Regulatory Act (Stats. 1937, p. 1797), the purpose of which was to regulate the business commonly known as the bail bond business. This statute was enacted as an amendment to the Insurance Code and is incorporated in sections 1830 to 1830.42, both inclusive of that Code. Section 1830.20 provides that no person shall write or furnish bail bonds for compensation or engage in the bail bond business in the state without first securing a permit to do so from the Insurance Commissioner. The law went into effect on August 27, 1937.

In due form the petitioners filed their application with the Insurance Commissioner for a permit to conduct a bail bond business. By section 1830.24 of the act it is provided: "The commissioner may issue a written permit to any person wishing to engage in the bail bond business upon application therefor accompanied by proof that the applicant is a fit and proper person to engage in such business."

Obviously for the purpose of obtaining information of the facts concerning the fitness of the applicants to receive the requested permit the commissioner held public hearings at which the petitioners and all other parties interested were afforded full opportunity to be heard. The hearing commenced on October 6, 1937, and was concluded on October 23, 1937. More than forty witnesses were called and examined. Many documents were introduced in evidence. The transcript of the testimony taken at the hearing contains nearly one thousand pages. Numerous witnesses testified before the commission that the petitioners were of good moral character and numerous witnesses testified that their moral character was bad. After the hearing the commissioner denied the application on the ground that the petitioners were not persons of good moral character and that they were not fit and proper persons to engage in the bail bond business. The petitioners then sought to test the lawfulness of the order of denial by injunction proceedings and by *habeas corpus* proceedings, the decision in the latter being found in *Ex parte McDonough*, 27 Cal. App. (2d) 155 [80 Pac. (2d) 485.] Being unsuccessful in both of those proceedings, and some nine months after the application for the permit was denied, the petitioners commenced the present proceedings in the District Court of Appeal. Upon the return to the alternative writ the matter was submitted on the petition and the answer and upon the transcript of the testimony taken and documents received at the hearing before the commissioner. By a divided court the District Court of Appeal entered an order granting the peremptory writ as prayed. A petition for hearing in this court was granted and after hearing and argument the matter is submitted to this court on the same record that was before the District Court of Appeal.

A question of procedure will first be disposed of. The petitioners contend that in an original *mandamus* pro-

ceeding in that court, the District Court of Appeal is the trial court and that when evidence is there presented and the court on conflicting evidence has announced a conclusion thereon, such conclusion is binding on this court. In other words it is contended that in such a proceeding the District Court of Appeal is the trial court and this court the reviewing court, and that the same rules should apply to such a review as are applicable on an appeal from the superior court. There is no merit in the contention. The practice is too well settled to require extended notice. When an order of transfer from the District Court of Appeal to the Supreme Court is made the decision of the District Court of Appeal is set aside and the matter is then pending in this court the same as if originally lodged here. As applied to an original proceeding such as the present one a quotation from the case of *Rockridge Place Co.* v. *City Council,* 178 Cal. 58, 60 [172 Pac. 1110], will be sufficient. It was there stated: ''When such an order is made within the time prescribed in the constitution the decision of the district court of appeal is vacated and the matter is transferred to this court for determination of all the material questions involved therein, to the same extent as if originally instituted in this court. It is also immaterial that the opinion of the district court of appeal may not show any error upon its face, when considered without regard to the record. The practice established by our decisions (*People* v. *Davis,* 147 Cal. 346 [81 Pac. 718]; *Burke* v. *Maze,* 10 Cal. App. 206, 215 [101 Pac. 438, 440]; *Rauer's Law etc. Co.* v. *Berthiaume,* 21 Cal. App. 670, 675 [132 Pac. 596, 833]), to the effect that in considering petitions for a hearing in this court of appeals required by our constitution to be taken to a district court of appeal, we will consider only the opinion of that court and will not look into the record, is confined to appeals, and has never been extended to original proceedings instituted in such courts. There are material differences between the two classes of matters, which, to our minds, preclude any such extension of the practice, or, at least, render it inadvisable to declare any such rule as to original proceedings instituted in a district court of appeal. There is no question of power involved in this regard. The power exists as to all matters, and has been exercised in this particular matter, with the result that the proceeding is now

here for determination on its merits." (See, also, *Estate of Stierlen*, 199 Cal. 140 [248 Pac. 509].)

■ Coming to the merits of the present application for the writ it must first be said without hesitation, that the conduct of a bail bond business is such a business as is subject to reasonable regulation under the police power of the state. The legislature has properly determined that abuses have arisen or may arise which make it necessary or desirable that there be some public supervision of that business. A contrary contention is entirely without merit. Also it may properly be concluded that one of the reasonable regulations which may be imposed is that a permit from some duly constituted authority be obtained as a condition to the transaction of such business, and that a permit may be denied to any person found not to be a fit and proper person to engage in such business. Section 1830.24 above quoted would seem. to be sufficient authority to refuse a permit to a person who is not a fit and proper person to engage in the bail bond business. But to remove all doubt on that subject the legislature has provided in section 1830.28 as follows: "The commissioner may refuse to issue any permit applied for unless it is made to appear that the applicant therefor is of good moral character and a fit and proper person to engage in the bail bond business."

■ When the question arises as to who is to determine whether the applicant is a fit and proper person to engage in such business we necessarily look first to the statute and find that in this case it is the Insurance Commissioner. There can be no doubt of the power of the legislature to confer upon such an administrative officer the authority to ascertain the prerequisite facts. In *Whitten* v. *California State Board of Optometry*, 8 Cal. (2d) 444 [65 Pac. (2d) 1296, 115 A. L. R. 1], it was said: "Agencies engaged in making administrative determinations, unlike courts, have the power and facilities to investigate and initiate action and, more or less informally, find the facts which under the law justify a course of action. They cannot and do not declare the law but perform the whole duty of ascertainment."

The legislature has the power to vest in a public officer the discretion to deny an application for a permit to engage in a business subject to regulation when prerequisite

facts do not exist. But such a discretion must be exercised within legal bounds. Those bounds are generally that the discretion of the administrative officer or board may not be exercised arbitrarily, capriciously, fraudulently, or without a factual basis sufficient to justify the refusal.

Numerous instances may be noted where the legislature has vested discretion in an administrative board or officer to ascertain the facts and in accordance with those facts, to grant or deny a permit to engage in a business which is so subject to regulation. In *Riley* v. *Chambers*, 181 Cal. 589 [185 Pac. 855, 8 A. L. R. 418], the discretionary power vested in the Real Estate Commissioner was under attack. That act authorized the commissioner to refuse a license if he was not satisfied that the applicant was "honest, truthful and of good reputation". It was said (p. 595): "But it may be said that the power of the commissioner to refuse a license if he is not satisfied as to the character of the applicant practically gives him arbitrary power as he alone can determine whether he is satisfied or not. This, however, is not true. While the commissioner has the power to refuse a license if he is not satisfied as to the character of the applicant, his discretion is not arbitrary. There must exist facts which reasonably justify his conclusion that the applicant is not of good character and reputation. If such facts do not exist, it is his duty to issue the license and this duty can be enforced by the courts." (See, also, *Ex parte McManus*, 151 Cal. 331 [90 Pac. 702]; *Tarpey* v. *McClure*, 190 Cal. 593 [213 Pac. 983]; *Doble Steam Motors Corp.* v. *Daugherty*, 195 Cal. 158 [232 Pac. 140]; *People* v. *Monterey Fish Products Co.*, 195 Cal. 548 [234 Pac. 398, 38 A. L. R. 1186]; *Dominguez Land Corp.* v. *Daugherty*, 196 Cal. 468 [238 Pac. 703]; *Bank of Italy* v. *Johnson*, 200 Cal. 1 [251 Pac. 784]; *People* v. *Globe Grain & Milling Co.*, 211 Cal. 121 [294 Pac. 3]; *In re Halck*, 215 Cal. 500 [11 Pac. (2d) 389]; *Cranford* v. *Jordan*, 7 Cal. (2d) 465 [61 Pac. (2d) 45]; *Gundling* v. *Chicago*, 177 U. S. 183 [20 Sup. Ct. 633, 44 L. Ed. 725]; *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539 [37 Sup. Ct. 217, 61 L. Ed. 480, Ann. Cas. 1917C, 643, L. R. A. 1917F, 514]; *Douglas* v. *Noble*, 216 U. S. 165 [43 Sup. Ct. 303, 67 L. Ed. 590]; *Porter* v. *Investors Syndicate*, 286 U. S. 461 [52 Sup. Ct. 617, 76 L. Ed. 1226].)

In *People* v. *Monterey Fish Co., supra,* this court said (p. 558): "The legislature may, without violating any rule or principle of the Constitution, confer upon an administrative board or officer a large measure of discretion, provided the exercise thereof is guided and controlled by rules prescribed therefor."

The Personal Property Brokers Act was involved in *In re Halck, supra.* The statute required the issuance of the license if the commissioner should find that "the financial responsibility, experience, character and general fitness" of the applicant were "such as to command the confidence of the community". This court said on pages 503, 504, in that case: "This means no more than that the commissioner may decline to license a person or entity, if, on the showing made, there is a reasonable ground for the conclusion that the applicant would not operate his business honestly, fairly or efficiently. This confers no arbitrary power. If the commissioner acts to the prejudice of an applicant, capriciously, arbitrarily, or solely without basis of right, his act may be supervised and controlled by the courts. The language complained of means no more than similar language construed in the following cases: *Riley* v. *Chambers,* 181 Cal. 589 [8 A. L. R. 418, 185 Pac. 855]; *Tarpey* v. *McClure,* 190 Cal. 593 [213 Pac. 983]; *People* v. *Globe Grain & Milling Co.,* 211 Cal. 121 [294 Pac. 3]; *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539 [Ann. Cas. 1917C, 643, L. R. A. 1917F, 514, 61 L. Ed. 480, 37 Sup. Ct. 217].)"

A survey of the foregoing authorities discloses that it is the settled general rule of law in this state that where the legislature has by statute clothed an administrative officer with power to ascertain the facts with reference to the fitness of an applicant for a permit to engage in a business subject to regulation under the police power and has vested in such officer the discretion, based on the facts ascertained, to grant or deny a permit to engage in such business the courts will not interfere with the exercise of such discretion except in the case of an abuse thereof. There may be modifications of this general rule under special circumstances not here present, as will hereinafter be noted.

The question here is whether the commissioner abused his discretion in denying the permit to the petitioners. Such abuse of discretion would appear if he acted arbitrarily,

capriciously, or fraudulently. No claim can properly be made that he acted capriciously or fraudulently. And he acted arbitrarily only in the event there was no sufficient factual basis for his conclusions.

The testimony before the commissioner was voluminous and highly conflicting. It would serve no useful purpose to set it forth in detail. Many witnesses testified to the good moral character and fitness of the petitioners and many witnesses testified directly to the contrary. Among the latter were the District Attorney of the City and County of San Francisco, two assistant district attorneys, the Chief of Police of said city, a deputy attorney-general of the state, the foreman of the grand jury, the president of the Junior Chamber of Commerce, a former president of the Police Commission of said city, and many others.

Unquestionably the testimony before the commissioner would sustain a conclusion either way upon the issue of the good moral character and fitness of the petitioners to engage in the bail bond business in San Francisco. If the trial had been before a court the evidence was sufficient to support findings either way or was sufficient to support a verdict either way on the issue. With this state of the record our inquiry on this phase of the case is at an end, for it cannot be said that there was not a sufficient factual basis for the conclusion of the commissioner and therefore he did not act arbitrarily or otherwise abuse his discretionary power in denying the permit.

The petitioners attack the statements made by some of the witnesses who testified against them on the ground that they formed their conclusions as to the general reputation and fitness of the petitioners from the fact that one of them had recently theretofore refused to testify before the grand jury upon the ground that his testimony might tend to incriminate him. But it does not appear that the testimony of those witnesses was based solely on that ground. In any event their testimony was admissible on the issue of character and it was immaterial to consider the reasons why the petitioners had attained a bad general reputation if, in fact, they had acquired such a reputation, as the witnesses testified.

The contention is made that many of the acts of the petitioners upon which some of the witnesses based their

opinion that the petitioners were not men of good moral character occurred prior to the enactment of the bail bond statute and that this evidence was improperly admitted and considered by the commissioner. There is no merit in the point. A person's general reputation is made up of what his neighbors and acquaintances think of him, basing their opinion on what they have observed or heard regarding his conduct in the past. The enactment of the statute had nothing whatever to do with the reputation of the petitioners. Their reputation, good or bad, existed at the time the statute was passed, and when they attempted to qualify under the statute that reputation when proved was a material factor respecting their right to a permit to transact business pursuant to the provisions of the statute. The respondent asserts that the showing of the bad reputation of the petitioners dated back to the connection of one of them with the disbarment proceedings culminating in *In the Matter of the Accusation of the Bar Association of San Francisco* v. *Sullivan,* 185 Cal. 621 [198 Pac. 7], and *In the Matter of the Accusation of the San Francisco Bar Association* v. *Oppenheim,* 186 Cal. 75 [198 Pac. 1069]. While the petitioners were not parties to those proceedings it cannot be said that the conduct of one of them with the accused and there subjected to public scrutiny and criticism could not form at least one of the predicates for the opinions expressed by some of the witnesses.

The petitioners' contention that the bail bond legislation is *ex post facto* is likewise without merit. The statute does not purport to prescribe a penalty for past delinquencies. It acts *in futuro.* (See *Foster* v. *Board of Police Commrs.,* 102 Cal. 483 [37 Pac. 763, 41 Am. St. Rep. 194].) The fact that the petitioners are denied certain privileges under the act by reason of their present existing inability to meet the conditions imposed by it in nowise affects its operation.

It is contended by the petitioners that, since they owned and conducted a lucrative bail bond business before the statute was passed, the enactment of the statute and the order of the commissioner herein deprived them of their property without due process of law. But this is not so. The fact that the petitioners enjoyed for many years the unregulated right to conduct a bail bond business would

in nowise prevent the legislature from enacting a statute immediately effective as to them provided their business be one that is subject to reasonable regulation under the police power of the state. As above stated the business of the petitioners is of such a nature that the requirement of a permit to conduct the business only upon a showing of fitness is unquestionably a reasonable one. The enactment operated immediately upon their status as bail bond brokers. From that time forward the conduct of their business was unlawful except under the conditions imposed and which they have been unable to meet. The enactment of reasonable regulations under the police power results in no deprivation of property without due process of law. The fact that a valuable business was built up without such regulation is no obstacle in the way of proper regulatory legislation immediately effective on all engaged in the theretofore unregulated business. Said legislation does not invade any constitutional right.

It is insisted that the bail bond statute fails to provide for notice and a hearing; that since this is so the statute is invalid, and that therefore the hearing conducted by the commissioner was entirely ineffectual to afford due process. The answer is that the notice and hearing which it is insisted the statute fails to provide for could in any event be only such notice and hearing as would afford due process when it is contemplated that some constitutional right is claimed to be invaded. Here, the hearing was not for the purpose of affording the petitioners an opportunity to resist an invasion of a constitutional right but was for the purpose of enabling the commissioner fairly and intelligently to determine whether a right should be granted to the petitioners, namely, a right to engage in a business the conduct of which, without a permit, was unlawful.

Nor did the order of the commissioner denying the permit deprive the petitioners of their property without due process. True, the statute had the effect of terminating their right to do business without a permit, but owing to the nature of the business, the legislature had the right to so terminate it conditionally, under its constitutional power to regulate such business. "Where the purpose of the statute is to protect the public from unfit persons, it is constitutional, although it disqualifies a person, by reason of past acts, from

continuing in the practice of his profession, or from remaining in his business.'' (12 Corpus Juris, p. 1106, sec. 815, and cases there cited.)

Since the argument in this proceeding, and on March 16, 1939, this court decided the case of *Drummey* v. *State Board of Funeral Directors & Embalmers,* 13 Cal. (2d) 75 [87 Pac. (2d) 848]. In a brief filed after the decision in that case the petitioners insist that the former and well-established rule with reference to the control by the courts of the discretionary power of an administrative officer has been so modified by that decision as in effect to require this court to weigh the evidence, judge of the credibility of the witnesses, exercise an independent judgment on the evidence and render its decision accordingly. In other words it is contended that under the ruling in the Drummey case this court should, in this *mandamus* proceeding, substitute its discretion for that of the commissioner and thus to that extent take over the administrative functions of the commissioner.

From a reading of the Drummey case it is obvious that the holding therein authorized an extension of the traditional functions of a proceeding in *mandamus* in the superior court. It is noted that the petitioners in that case were possessed of licenses to engage in the business of funeral directors and embalmers, which were recognized to be valuable property rights. The state board, respondent in that proceeding, had ordered the licenses of the petitioners suspended for alleged unlawful soliciting of dead bodies. It was held that the superior court in such a proceeding had the power to exercise an independent judgment on the facts presented to it and thus inquire into and determine the question of the lawfulness of the order of the board, and that the petitioners had the right to require that the trial court conduct what would be in substance and effect a trial *de novo* in the course of which the parties would not be limited to the record made before the board. The ruling in the Drummey case constitutes an exception to the general rule which is decisive of the present matter, and the occasion for establishing such an exception was brought about by recent holdings of the Supreme Court of the United States, particularly in *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38 [56 Sup. Ct. 720, 80 L. Ed. 1033]. That decision appeared to make it mandatory to afford a hearing

before a court or some other duly constituted body exercising judicial functions to a party dissatisfied with the determination of a state-wide administrative board or officer when constitutional rights were involved. It was therefore considered that since numerous state-wide administrative boards and officers were of statutory creation and the jurisdiction of the superior court in such matters was within the control of the legislature under section 5 of Article VI of the Constitution, it would be competent for the legislature to provide, as it had in numerous statutes creating such administrative boards and officers, for a hearing *de novo* in the superior court, and that even in the absence of such a statutory provision due process required that a party aggrieved by reason of a ruling of the officer or board involving a constitutional right be accorded an opportunity to resort to a judicial tribunal for redress. The ruling in the Drummey case should be limited to the situation therein appearing, and as an exception to the general rule in *mandamus* proceedings in the superior court is not to be applicable otherwise. The Drummey case involved an order the effect of which, if unlawful or otherwise unjustified from a judicial viewpoint, would be to deprive the aggrieved party of a constitutional right without due process of law. To avoid this result it was held that the aggrieved party should there have the opportunity of a judicial hearing on the merits of his case.

We conclude that the petitioners herein have not made a sufficient showing to justify this court in disturbing the order of the Insurance Commissioner denying their application for a permit to conduct a bail bond business.

Accordingly the alternative writ is discharged and the peremptory writ is denied.

Rehearing denied.