[Crim. No. 1376.  In Bank.—May 22, 1907.]

## Ex Parte E. C. McMANUS, on Habeas Corpus.

STATE BOARD OF ARCHITECTURE—CONSTITUTIONALITY OF ACT CREATING—
CLASSES OF ARCHITECTS—UNCERTIFICATED ARCHITECTS—UNIFORM
OPERATION OF ACT.—The provisions of the act of March 23, 1901,
creating the state board of architecture, which empower such board
to grant certificates to practice the profession of architecture upon
an examination of applicants therefor, and which punishes as a
misdemeanor the practice of such profession without a certificate,
unless the architect so doing fully informs the person for whom he
is acting that he is not a certificated architect, is not in violation
of section 11 or 21 of article I of the state constitution.  Such act
recognizes two classes of architects whom it permits to practice
the profession of architecture, to wit (1) certificated architects, and
(2) uncertificated architects who inform their patrons that they
are not certificated.  The act is uniform in its operation as to all
architects who have not a certificate, and makes no arbitrary or
other discrimination as to members of that class, nor does it
grant any special privileges or immunities to any of that class
which are not possessed by or extended to all.

ID.—DELEGATION OF MINISTERIAL DUTIES BY LEGISLATURE—PUBLIC COM-
MISSIONS—OCCUPATIONS REQUIRING SPECIAL SKILL OR KNOWLEDGE.
—The legislature, notwithstanding it may do things itself, may
nevertheless authorize them to be done by ministerial officers or
boards when it believes that they can do them more conveniently
and effectually than it can itself.  Especially may this be done
when it is deemed proper by the legislature to regulate in the
interests of the public, through public commissions or boards consti-
tuted for that purpose, the pursuit of particular professions or
occupations which involve the exercise of skill and the possession
of special knowledge and experience. ·

ID.—POWER OF BOARD TO ADOPT RULES—REASONABLENESS OF RULES—
EXAMINATION OF APPLICANTS.—The provision of that act empower-
ing the board of architecture to formulate and adopt a code of
rules and regulations for its government in the examination of
applicants for certificates to practice architecture, and such other
rules and regulations as may be necessary and proper, not incon-
sistent with the act, and, should the applicant pass a satisfactory
examination, to grant him a certificate, does not delegate legislative
functions to the board within the constitutional inhibition, or give
them any other authority than the power necessary to be exercised
by them to the end that the law as completely enacted by the
legislature may properly be carried into effect.  Such provision,
in so far as it authorizes the board to adopt rules and regulations

for the examination of applicants, does not confer discretionary and arbitrary power upon the board under which discriminating, unreasonable, and unfair rules and regulations may be established. The authority conferred by the terms of the act is to pass necessary and proper rules on the subject, which implies that such rules must be reasonably adapted for the purpose of determining the qualifications of all applicants, and the court will not presume that the authority conferred will be abused by the formulation of unreasonable or unjust rules, and from such presumption declare the act to be unconstitutional.

ID.—REMEDY IF RULES ARE UNREASONABLE.—If the board should adopt rules which are not uniform, or which are discriminating or unreasonable, that would not affect the validity of the act; it would simply be a violation of its provisions. The remedy, if the board violates its duty in this respect, is to apply to the court under some proper and appropriate proceeding for relief. It does not justify an attack upon the validity of the act in *habeas corpus* proceedings.

ID.—MODE OF APPOINTMENT OF BOARD.—The provision of that act for the appointment by the governor of the ten members of the board, of whom five should be from the San Francisco chapter and five from the Southern California chapter of the American Institute of Architects, or from some similar institution or association of architects, is not unconstitutional. (*Ex parte Gerino*, 143 Cal. 413, approved.)

APPLICATION for a Writ of Habeas Corpus directed to the Chief of Police of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Galpin, Elkins & Frost, for Petitioner.

Jordan, Rowe & Brann, for Respondent.

LORIGAN, J.—The petitioner was arrested, charged with practicing the profession of architecture without a certificate from the state board of architecture, and brings this proceeding on *habeas corpus*.

The state board of architecture was created by an act of the legislature approved March 23, 1901 (Stats. 1901, p. 641). The act was amended in 1903 (Stats. 1903, p. 522), but as this amendment does not affect the question here involved, no further reference shall be made to it.

The act of 1901 provides that the state board of architecture shall consist of ten persons, appointed by the governor—five

from the San Francisco chapter, and five from the Southern California chapter, of the American Institute of Architects, or some similar institution or association of architects, and empowers such board to grant certificates to practice the profession of architecture upon an examination of applicants therefor. As to such examination, the act provides that the board shall "formulate and adopt a code of rules and regulations for its government in the examination of applicants for certificates to practice architecture in this state; and such other rules and regulations as may be necessary and proper, not inconsistent with this act," and "should the applicant pass a satisfactory examination" grant him a certificate. It is further provided that any architect in good standing engaged in the practice of the profession of architecture on the date of the passage of the act, and applying to the board therefor within six months from the passage of the act, shall be granted a certificate without passing an examination. The act then proceeds to declare that "after the expiration of six months from the passage of this act, it shall be unlawful, and it shall be a misdemeanor punishable by fine of not less than $50 nor more than $500 for any person to practice architecture without a certificate in this state, or to advertise or put out any sign or card or other device, which might indicate to the public that he was an architect; provided that nothing in this act shall prevent any person from making plans for his own buildings, or furnishing plans or other data for buildings for other persons, provided the person so furnishing such plans or data shall fully inform the person for whom such plans or data are furnished that he, the person furnishing such plans, is not a certificated architect. . . ."

These are the only provisions of the act necessary to refer to, as they are the only ones involved in the consideration of this application.

The claim of the petitioner is that the act in question is unconstitutional and void.

It is not contended but that the legislature has the power, for the protection of the public, to regulate the practice of any particular profession which requires the possession of special knowledge, skill, and training in its exercise, nor that the profession of architecture is not within that class. In

fact, this right and its exercise with reference to architects is conceded, but it is claimed that in attempting to exercise it under the act in question certain provisions of our state constitution were violated and the act is therefore void.

In this regard it is insisted that the act is violative of sections 11 and 21 of article I of the constitution of this state in this: That while the law is one of a general nature, it does not operate uniformly upon all who belong to the class upon which it is intended to operate; but that it grants special privileges and immunities to some of the class which are not granted to all. In other words, it is contended, that there is a distinct and arbitrary discrimination in favor of architects who inform their patrons they are not certificated architects, and a grant to such class of immunity from punishment which may be inflicted upon other architects who do not inform their patrons they are uncertificated architects.

We do not perceive any force in this contention of petitioner. There is no class discrimination as to uncertificated architects, but, on the contrary, the act operates uniformly upon all that class. Any one of the class of uncertificated architects can practice his profession under the terms of the act—that is, prepare plans and other data for buildings— without rendering himself amenable to punishment, by informing his client or patron that he is not a certificated architect. This is open to all uncertificated architects. The purpose of the law in providing for certificated architects was, as we have incidentally remarked, in the interest of and for the protection of the public. The possession by an architect of a certificate of the state board of architects was in the judgment of the legislature a sufficient guarantee to the public of the skill and fitness of its holder to pursue his profession. The further provision of the statute that an uncertificated architect might practice architecture to the extent stated therein, provided he informs his employer that he has no certificate, was equally in the public interest, because the employer is thereby placed on his guard as to whether he will employ an architect who has not obtained the certificate which, if his skill and knowledge warranted, he could have obtained from the state board.

As this provision of the law applies to all architects who have not a certificate, we cannot discover any support for the

objection that any arbitrary or other discrimination as to members of that class exists.

Neither do we perceive how under the act any special privileges or immunities are granted to any of the class of uncertificated architects which are not possessed by or extended to all. That entire class are accorded the privilege and right to practice architecture, provided they inform their patrons that they do not hold certificates, and they are granted immunity from punishment provided they do so. Hence the same privileges and the same immunities apply to all of the class.

It is next asserted that the act is void because in attempting to regulate a lawful occupation the legislature has provided no standard of proficiency nor prescribed any rules under which the qualifications of an applicant for a certificate can be determined.

It is insisted in this connection that it was the duty of the legislature to have itself fixed in the act some standard or rules for determining the qualifications of applicants; that this was a legislative duty to be discharged by the legislature itself and a function which it could not delegate to the board of architecture, nor invest it with arbitrary power to provide a standard or rules upon the subject.

It is undoubtedly a well-recognized maxim of constitutional law that authority conferred on the legislature to make laws cannot be delegated by it to any other department or body. But here there is no delegation by the legislature to the state board of architecture of the power to declare what the law shall be. That is declared by the act.

It is an equally well-recognized principle that the legislature, notwithstanding it may do things itself, may nevertheless authorize them to be done by ministerial officers or boards when it believes that they can do them more conveniently and effectually than it can itself. Especially may this be done when it is deemed proper by the legislature to regulate in the interests of the public, through public commissions or boards constituted for that purpose, the pursuit of particular professions or occupations, as for example that of physicians, dentists, druggists, engineers, architects, and others, which involve the exercise of skill and the possession of special knowledge and experience. Such commissions or

boards are composed, as under this act the board of architects necessarily must be, of persons technically skilled and trained in their profession or occupation, and who are usually better able to determine whether an applicant for a license or certificate to practice a given profession or occupation is competent to do so, under reasonable rules and standards adopted by them, than under those which might be prescribed by the legislature. And if in its wisdom the legislature authorizes such a technically trained commission or board to prescribe reasonable rules or fix a fair standard for determining the proficiency of applicants for a license or certificate, it cannot be said that a delegation, within the constitutional inhibition of authority to make laws is conferred, or any other authority given, than the power necessary to be exercised by them to the end that the law as completely enacted by the legislature may properly be carried into effect.

Nor is the objection of petitioner, that by the provision authorizing the board to adopt rules and regulations for the examination of applicants, discretionary and arbitrary power is conferred upon the board under which discriminating, unreasonable, and unfair rules and regulations may be established. No arbitrary power is conferred on the board in this respect. The authority conferred by the terms of the statute is to pass necessary and proper rules on the subject; rules which must be reasonably adapted for the purpose of determining the qualifications of all applicants to practice the profession of architecture from an examination of the applicant on subjects pertaining to that profession. It was not necessary in the act to declare in terms that the rules and regulations which the board might adopt should be reasonable ones, although the requirement that they be necessary and proper ones amounts to the same thing. There is always implied in a grant of authority, such as here conferred, that it shall be exercised reasonably and fairly so as to effectuate the end contemplated. It may not be presumed that the authority conferred will be abused by the formulation of unreasonable or unjust rules, and from such presumption declare the act to be unconstitutional. On the contrary, the presumption is that the board will not act unreasonably or unfairly. As under the terms of the statute, as well as in contemplation of law, the authority conferred upon the board

is to make necessary and proper, and hence reasonable, rules relative to the subject of the examination of applicants, it can be of no moment to consider the possibility of their formulating unreasonable or unfair ones, and hence violative of the terms of the statute. We are not advised in this proceeding whether the board has adopted any rules at all. If they should adopt rules which are not uniform, or which are discriminating or unreasonable, that could not affect the validity of the act; it would simply be a violation of its provisions.

The remedy of the petitioner, if the board violates its duty in this respect, is to apply to the court under some proper and appropriate proceeding for relief. It does not justify an attack upon the validity of the act in *habeas corpus* proceedings.

It is concluded upon this proposition that the legislature has the power to delegate to a commission or board, trained in a given profession or skilled in a given art, the right to fix the qualification of applicants desiring to practice such professions or art. The legislature itself is not obliged in the law regulating such profession to fix the standard of excellence or knowledge in the given profession which an applicant for admission thereto shall be required to possess. Such requirements may be left to the sound discretion of the commission or board, which will be accountable in the courts for any abuse or unjust exercise of the discretion with which it is vested. A familiar instance of this is found in the law touching the admission of attorneys to practice before the courts of this state. Sections 275 and 276 of the Code of Civil Procedure, as they formerly read, declared that every applicant for admission as an attorney and counselor must have the qualifications of learning, ability, and character, and must produce satisfactory testimonials of good moral character, and undergo a strict examination in open court as to his qualifications by the justices of the supreme court. As the law now reads, the only change is in conferring this power of examination upon the district courts of appeal. A vast majority of the practicing lawyers of this state have been admitted after such examination by virtue of these sections. It would come with some shock of surprise to these members of this learned profession to be told that their

CLI Cal.—22

licenses were void because the legislature had failed to define the qualifications which they must possess.

Other tribunals have been called upon to consider laws of similar import, and it will be found that their determinations are all in harmony, and in favor of the views above expressed. (*State* v. *Knowles*, 90 Md. 646, [45 Atl. 877]; *Kettles* v. *People*, 221 Ill. 221, [77 N. E. 472]; *In re Thompson*, 36 Wash. 377, [78 Pac. 899]; *Ex parte Gerino*, 143 Cal. 412-417, [77 Pac. 166]; *Ex parte Whitley*, 144 Cal. 167-179, [77 Pac. 879].)

The last point made by petitioner, as to the constitutionality of the manner of appointment of the state board provided for in the act, is fully disposed of in *Ex parte Gerino*, 143 Cal. 413, [77 Pac. 166]. While some objections are leveled against the manner of appointment provided for in the act under consideration now, in addition to those urged against the act considered in *Ex parte Gerino*, the reasoning and discussion in the opinion of the court in the Gerino case embraces them all, and disposes of them adversely to the contention of petitioner.

In our opinion the act in question is not open to the claims of petitioner against its constitutionality.

The petition is denied and the petitioner remanded to the custody of the chief of police of the city and county of San Francisco.

Henshaw, J., McFarland, J., Angellotti, J., and Sloss, J., concurred.

SHAW, J., concurring.—I concur in the opinion of Justice Lorigan. I think, however, that it does not sufficiently state the reasons for the proposition that the law does not delegate legislative power to the state board of architecture. If the statute gave power to the board to determine the qualifications necessary to entitle a person to become a certificated architect, it would be a delegation of legislative power. It does not do this, however. The statute does not expressly prescribe any standard of qualification in the applicant. It must be construed as at least an implied declaration that no person shall be entitled to a certificate as a licensed architect, unless he has such ordinary knowledge of the principles

and science of that art or profession, and such ordinary skill in the practical application of those principles and that science, as are usually possessed by those engaged therein. It is the usual standard implied in law, where no different standard is expressed by the statute. Doubtless the statute might require a higher standard, or a lower standard, but inasmuch as it does not expressly require any, it is to be considered as implying a requirement of the standard above stated. The provisions of the statute give the board the power to adopt rules and regulations, but it does not authorize it to require or enforce a different or higher standard than that of ordinary knowledge and skill, nor to require knowledge and skill of some other art or profession as a condition. It could not, for instance, require the applicant to display a knowledge of theology, or medical science, as a condition of receiving a certificate. The power which is conferred upon it is merely to make such examination as it shall deem sufficient to enable it to decide whether or not the applicant has this ordinary knowledge and skill. This is a task which the legislature could not itself undertake in each individual instance. If it were a legislative act, of a character so that it could not be delegated, it would follow that it would practically be impossible for the legislature to perform it, and consequently there could be no regulation of this or any other profession. The thing required of the board is the determination of the fact that the applicant does or does not have the qualifications which the law implies he must have. This is a ministerial or administrative function. Like many other ministerial acts, it involves to some degree a consideration of the effect of evidence and is similar in that regard to judicial proceedings, but it is well settled that such acts are not so far judicial that the legislature may not place the power elsewhere than in the court. The rules and regulations referred to in the act are merely such rules and regulations as relate to the method by which the board is to proceed in determining this fact.