[S. F. No. 13907. In Bank.—December 15, 1930.]

THE PEOPLE, Respondent, v. GLOBE GRAIN AND MILLING COMPANY (a Corporation), Appellant.

William B. Hornblower, Fabian D. Brown and C. C. Baker for Appellant.

Argyle Campbell, B. D. Marx Greene and Carl Westerfeld for Respondent.

THE COURT.—This is an appeal from an order of the superior court granting a preliminary injunction. The action was brought by the city attorney of Monterey to restrain the taking of sardines by defendant for reduction purposes, on the ground that such use of the fish caused irreparable injury to the people of the state and thereby constituted a public nuisance. The defense was that the taking was authorized by the terms of a permit granted by the Fish and Game Commission pursuant to a statute enacted in 1929. This would, of course, normally be a sufficient defense. (Cal. Civ. Code, sec. 3482.) Plaintiff contended, and the lower court held, that the statute was unconstitutional and hence did not justify acts which would otherwise have amounted to a nuisance. Some suggestion is also made by plaintiff that the statute does not confer up_n the commission itself the power to grant the type of permit involved herein, but we deem this to be without merit. The sole basis upon which the injunction was granted was the alleged invalidity of the statute.

The law in question is the "Fish Reduction Act" as amended in 1929. (Stats. of 1929, p. 901; Deering's General Laws, 1929 Supplement, Act 2895, p. 3224.) The original statute, as enacted in 1919 and amended in subsequent years, had for its object the conservation of food fish for purposes of human consumption. However, in recognition of the problem facing canners in the use of an excess catch and the disposal of fish which are broken or otherwise unsuited for canning, the statute permitted sardine canners

actually engaged in operating their plants to use not more than thirty-two and one-half per cent of their catch in a reduction plant, and also allowed the reduction of all fish unfit for ordinary methods of preserving, where they had not been deliberately taken into the plant in such condition. These provisions were construed and upheld in *People* v. *Monterey Fish Products Co.*, 195 Cal. 548 [38 A. L. R. 1186, 234 Pac. 398].

In 1929 the statute was again amended to allow the reduction of fish by others than packers of sardines. The amendment reads in part as follows: " . . . The Fish and Game Commission may grant a revocable permit or permits in such amount and subject to such restrictions, rules or regulations as the Fish and Game Commission may adopt or prescribe to take and use fish by a reduction or extraction process for the manufacture of edible products fit for, intended to be used and in fact used for human consumption providing it shall be shown and appear to the satisfaction of the Fish and Game Commission that such use of such fish will not tend to deplete the species, or result in waste or deterioration of such fish; and provided, further, that no such permit shall be granted unless at least fifty per cent (50%) of the weight of the whole round fish or all of the oil extracted from such fish is manufactured into such products within the state of California." It will be observed that while this provision allows the taking of fish for reduction purposes, it is nevertheless required that the product be intended for and suited to human consumption.

Defendant has a reduction plant at Monterey. On June 22, 1929, it made application to the Fish and Game Commission for a permit under the foregoing statute. On November 12, 1929, the commission held a hearing on the application, and on December 9, 1929, granted a permit to take and use not more than 7,500 tons for the period of the sardine season ending February 15, 1930. It is this permit which is relied upon as a defense to the suit for an injunction.

Plaintiff's contention is that the amendment to the statute is unconstitutional in that it grants to the commission an uncontrolled discretion, and permits discrimination between applicants. We are of the opinion that the amend-

ment, properly construed, does not exhibit either of these defects.

The commission is given a broad but not an uncontrolled discretion. It may grant a permit only upon a showing that the use of the fish "will not tend to deplete the species or result in waste or deterioration", and the permit is always revocable. Here we have a condition limiting the exercise of the delegated power and, indeed, the only practicable one under the circumstances. Certainly the legislature cannot intelligently prescribe any maximum quantity for all applicants or for any one applicant; nor would it be practicable for the legislature to fix any period of time for the duration of the permit. These are important matters, but an administrative body in close touch with the conditions of the industry is far more competent to determine them than the legislature. Aside from this practical consideration there is nothing unconstitutional in the grant to an administrative body of such authority, where the statute contains a guide to and a limitation upon its actions. (*Tarpey* v. *McClure*, 190 Cal. 593 [213 Pac. 983]; *Bank of Italy* v. *Johnson*, 200 Cal. 1 [251 Pac. 784]; see, also, 15 Cal. Law Rev. 408.) Here the statute contains the necessary limitation in the requirement that each applicant must make a showing, and the commission must find, that the granting of the permit will not conflict with the fundamental object of the statute— the conservation of food fish. In short, the question presented by the vesting of discretionary power in the commission by this amendment is very much the same as that presented by the original statute; and as to that this court said in *People* v. *Monterey Fish Products Co., supra* (p. 558): "There is no merit in the contention that the act is invalid for the reason that it purports to vest in the commission arbitrary authority and unguided discretion in that it may allow one canner to take twenty-five per cent and another five per cent and another one per cent of excess fish. The act confers discretion upon the commission, it is true, but such discretion is neither unguided nor uncontrolled. Its exercise is made dependent upon the findings of fact after a hearing 'that there is no market for the fish referred to in said application and that the taking or using of said fish in a reduction plant will not tend to impair or

deplete said species of 'fish'. It is apparent that there may be varying circumstances of time, place, method of catching fish, location where they are to be found with relation to the location of the cannery, etc., which may legitimately justify the allowance of a larger leeway in one case than in another. The legislature may, without violating any rule or principle of the Constitution, confer upon an administrative board or officer a large measure of discretion, provided the exercise thereof is guided and controlled by rules prescribed therefor (*Tarpey* v. *McClure,* 190 Cal. 593 [213 Pac. 983], and cases cited)."

The two statutes are similar in the one important respect that in each the discretionary power vested in the commission is controlled by a standard or guide set forth in the law itself. It is true that one contains more specific restrictions than the other. This is purely a matter of legislative policy, and does not affect the constitutional problem. The only substantial difference between them, so far as concerns the question of administrative discretion, is that the original statute expressly provides for a hearing. The difference is not material. ■ The essential requirement of due process is merely that the administrative officer or body be required to determine the existence or nonexistence of the necessary facts before any decision is made. If the statute requires this, it does not vest an uncontrolled discretion, and the officer or body may not act arbitrarily. (*Riley* v. *Chambers,* 181 Cal. 589 [8 A. L. R. 418, 185 Pac. 855]; *Doble Steam Motors Corp.* v. *Daugherty,* 195 Cal. 158 [232 Pac. 140]; *Ex parte McManus,* 151 Cal. 331 [90 Pac. 702].)

■ The contention that the statute is discriminatory is purely speculative. On its face it treats all persons in the same manner, authorizing the commission to extend its benefits to anyone so long as the interests of the people in the preservation of food fish are safeguarded. The theory of the attack appears to be that inasmuch as the legislature has not expressly prohibited discrimination between applicants, the commission may therefore favor one over others, and might perhaps create a monopoly by granting a permit to one person to take all the available fish. The courts have given scant consideration to such reasoning. The Supreme Court of the United States disposed of a similar contention

in the following language: "Learned counsel for the defendant suggests some extreme cases, showing how reckless and arbitrary might be the action of executive officers proceeding under an act of Congress, the enforcement of which affects the enjoyment or value of private property. It will be time enough to deal with such cases as and when they arise." (*Monongahela Bridge* v. *United States*, 216 U. S. 177, 195 [54 L. Ed. 435, 30 Sup. Ct. Rep. 356].) A statute cannot be declared unconstitutional upon such implications. The rule is just the contrary. It is of no consequence that the statute makes no reference to an equitable apportionment of the benefits to be granted. The important thing is that it contains no express grant of authority to the commission to indulge in favoritism or to make or enforce discriminatory rules. ■ A presumption of constitutionality protects every legislative act. Being silent on the matter of apportionment of the benefits, the statute will be construed together with the constitutional provisions against discrimination, and, as so construed, must be upheld. (*County of San Luis Obispo* v. *Murphy,* 162 Cal. 588 [Ann. Cas. 1913D, 712, 123 Pac. 808]; *Chesebrough* v. *San Francisco,* 153 Cal. 559 [96 Pac. 288]; *Wheeler* v. *Herbert,* 152 Cal. 224 [92 Pac. 353]; *In re Spencer,* 149 Cal. 396 [117 Am. St. Rep. 137, 9 Ann. Cas. 1105, 86 Pac. 896]; *Lent* v. *Tillson,* 72 Cal. 404 [14 Pac. 71]; *Plymouth Coal Co.* v. *Pennsylvania,* 232 U. S. 531 [58 L. Ed. 713, 34 Sup. Ct. Rep. 359]; *Estate of Johnson,* 139 Cal. 532 [96 Am. St. Rep. 161, 73 Pac. 424]; *Quong Ham Wah Co.* v. *Industrial Acc. Com.,* 184 Cal. 26 [12 A. L. R. 1190, 192 Pac. 1021]; 12 C. J. 787, sec. 220; 5 Cal. Jur. 615, sec. 46; 628, secs. 56, 57; 6 R. C. L. 78, sec. 77.)

The two principles just considered, namely, that a statute is presumed to be constitutional, and that it will be given a construction consistent with validity if at all possible, dispose of the attack leveled at the statute itself. We do not mean to hold that the decision of the commission in granting a permit to the defendant must necessarily be affirmed as a proper exercise of its discretion. That question is not before us. No contention is made that there was discrimination in the granting of this particular permit. Hence, plaintiff is in no position to raise this constitutional question. ■ It is well established that a charge of unconstitutional dis-

crimination can only be raised in a case where this issue is involved in the determination of the action, and then only by the person or a member of the class of persons discriminated against. (*Estabrook Co.* v. *Industrial Acc. Com.*, 177 Cal. 767 [177 Pac. 848]; 5 Cal. Jur. 622, secs. 52, 53; 6 R. C. L. 89, secs. 87–89; 12 C. J. 768, sec. 189.) Although this rule is subject to certain exceptions (see *Quong Ham Wah Co.* v. *Industrial Acc. Com., supra*), none of them are applicable to the situation presented by this case.

It may be observed in conclusion that the legislature, in its desire to further the program of fish conservation without unduly restricting the development of this industry, has had occasion to change the scope and method of operation of this statute a number of times. Presumably the present amendment represents its well-considered judgment on the most reasonable and practicable method of achieving both of these ends. We should be slow to disturb the result of this judgment, and in no case should we anticipate capricious acts which are not intended by the legislature and which may never take place. (See *In re Holmes,* 187 Cal. 640 [203 Pac. 398]; *In re Culver,* 84 Cal. App. 295 [257 Pac. 876]; *Rode* v. *Siebe,* 119 Cal. 518 [39 L. R. A. 342, 51 Pac. 869].)

█ It is to be presumed that the commission will exercise its powers in conformity with the statute and Constitution of the state. It is to be expected that it will formulate reasonable rules of policy and practice. (*Ex parte McManus,* 151 Cal. 331 [90 Pac. 702].) In the event that the applications for permits should exceed in quantity requested the amount of fish which the commission finds may safely be taken, it would be the duty of the commission to make an equitable apportionment of its permits. Unless and until the commission is guilty of dereliction in these matters, and a charge of arbitrary action or discrimination is raised by a party affected by its decision, there is no basis for the intervention of this court. Should the question be presented at some future time in the proper manner, we would review the order of the commission in the same manner that we review the orders of other administrative bodies and officers.

The judgment is reversed, with directions to the trial court to dissolve the injunction.