Filed 3/26/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AARON PERSKY, Plaintiff and Appellant, v. SHANNON BUSHEY, Respondent; MICHELE DAUBER, et. al., Real Parties in Interest; ALEX PADILLA, Intervener and Respondent. | H045129 (Santa Clara County Super. Ct. No. 1-17-CV-314311) |

Appellant Aaron Persky, a superior court judge in Santa Clara County, is the subject of a recall effort initiated by Michele Dauber and 19 others, real parties in interest in the underlying proceedings. Judge Persky unsuccessfully sought writ relief to enjoin the circulation of the recall petition on the ground that it should have been filed with the California Secretary of State, not the Registrar of Voters. On appeal, Judge Persky maintains that a writ of mandate should have been granted, because a judge of the superior court is a state officer who can be recalled only by a petition reviewed and certified for circulation by the Secretary of State. We find no procedural error and therefore must affirm the order.

*Background*

Judge Persky was appointed to the superior court bench in 2003 and has been reelected thereafter, most recently in 2016.  On July 10, 2017, Dauber and the 19 other individuals (hereafter, Real Parties or the proponents) submitted a "Petition for Recall of Judge Aaron Persky" to the Registrar, Shannon Bushey.  Judge Persky's attorney, Mark S. Rosen, responded, asserting several flaws in the proposed petition, primarily that (1) under the California Constitution the Secretary of State, not the Registrar, was the proper elections official for recall of state officers; and (2) the petition contained an "incorrect and misleading" demand for an election to choose a successor, because a vacancy would actually be filled by the Governor's appointment.  On behalf of the Registrar, County Counsel disagreed with both points advanced by Rosen.

An amended recall petition was submitted to the Registrar on August 1, 2017, and eight days later it was approved for circulation.[1]  The proponents were given 160 days to circulate the petition, giving them through January 16, 2018 to collect signatures.  The Registrar advised the proponents that they needed 58,634 signatures of registered voters in the jurisdiction, which equaled 20 percent of the votes cast in the November 2014 election for Judge Persky's office.

On August 11, 2017, Judge Persky filed an ex parte application for a temporary restraining order (TRO) and "Order to Show Cause Why Peremptory Writ Should Not Issue."  He asked the superior court to compel the Registrar (1) to withdraw certification of the recall petition and refer the matter to the Secretary of State "as the officer with

---

[1] In addition to Dauber, the proponents named in the amended petition were Magdalena G. Carrasco, Grace H. Mah, Robert Livengood, Raul Peralez, Richard Tran, Gary Kremen, Patrick J. Burt, Amado M. Padilla, Shanta Franco-Clausen, Yan Zhao, Jennifer Briscoe, Suzanne E. Doty, Allan Seid, M. Viera C. Whye, Kavita Tankha, Sophia Yen, Gabriel Manjarrez, Steve Ko, and Paulette Altmaier.  Two of these names were spelled differently in Judge Persky's writ petition, but no legal issue appears to have arisen from any misspelling.

proper jurisdiction over the recall of [s]uperior [c]ourt judges"; (2) to enjoin circulation of any recall petition until the Secretary of State certified it for circulation; and (3) to enjoin circulation while the recall petition contained the allegedly misleading statement demanding the election of a successor. That day the Honorable Marjorie Laird Carter (a retired judge sitting on assignment) issued the Order to Show Cause and TRO, enjoining circulation of the petition pending resolution of the dispute. Judge Carter, however, was successfully challenged under Code of Civil Procedure section 170.6, and the matter was heard thereafter by the Honorable Kay Tsenin (also sitting by assignment).

Judge Persky filed his verified petition for peremptory writ of mandate the same day, August 11, 2017. He maintained that it was the Secretary of State, not the Registrar, who should handle the matter, pursuant to article II, section 14, of the California Constitution.[2] That provision, according to Judge Persky, designated the Secretary of State as the proper official to review and certify recall petitions directed at state officers, a category that included superior court judges. The petition also repeated the assertion that the demand for election of a successor was "misleading and inaccurate" in failing to recognize that the governor fills any vacancy left by removal of a superior court judge.

The Secretary of State, Alex Padilla, (hereafter, the Secretary) sought to intervene in the action, on the ground that Judge Persky's claims implicated his "duty, as the State's chief elections officer, to see that the State's elections laws are properly enforced." Over Judge Persky's opposition, the court granted the Secretary's application, and his opposition to the writ petition was filed on August 28, 2017. Both the Secretary and the Registrar, as well as Real Parties, maintained that the Registrar was the proper official to oversee the process of recalling a superior court judge, who was a "local officer," not a "state officer," under the recall election laws in place.

---

[2] Further unspecified references to articles are to the California Constitution.

3

On September 7, 2017, after extensive briefing and oral argument, Judge Tsenin denied Judge Persky's petition and dissolved the TRO. She determined that the Registrar was the proper official to review and approve recall petitions for superior court judges and that the recall petition submitted in this case was neither misleading nor inaccurate. From those orders Judge Persky filed this timely appeal.

*Discussion*

On appeal, Judge Persky renews his challenge to the Registrar's participation in the initial process for recalling a superior court judge. He acknowledges that Elections Code sections 11001 through 11004[3] prescribe the very procedure that was undertaken here, but he insists that those provisions cannot be reconciled with article II, section 14, California Constitution. In response, Real Parties and the Secretary (joined by the Registrar) defend the lower court's ruling as consistent with the plain language of the applicable Elections Code provisions. They maintain that neither article II, section 14, nor the history of the elections laws in this state supports Judge Persky's assertion that he is a state officer subject to the Secretary's exclusive jurisdiction over the entire recall process.[4]

*1. Standards of Review*

The parties agree generally on the principles governing this court's review. There is no dispute about the meaning of the Elections Code provisions assigning responsibility for the oversight of the initial recall process. We therefore are not confronted with the

---

[3] Further statutory references are to the Elections Code except as otherwise indicated.

[4] Real parties add that "it is noteworthy that *literally no one else in the entire State of California* agrees with his contention that trial judges must be classified as 'state officers' for purposes of the recall." No evidence is cited for this supposed fact—nor could there be, since it is inconceivable that "literally" no one in this entire state agrees with Judge Persky's position.

4

task of interpreting statutory language.  Instead, the central issue before us is the validity of those provisions in light of the recall procedure specified in article II, section 14.

Determining the constitutionality of a statute presents a question of law, which we review de novo.  (*People v. Health Labs. of N. Am.* (2001) 87 Cal.App.4th 442, 445.)  "All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity.  Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears."  (*Lockheed Aircraft Corp. v. Superior Court of Los Angeles County* (1946) 28 Cal.2d 481, 484; see also *People v. Globe Grain & Milling Co.* (1930) 211 Cal. 121, 127 [a statute is presumed to be constitutional and "will be given a construction consistent with validity if at all possible"].)  " 'Invalidating legislation is serious business,' " and we cannot construe a statute "contrary to legislative intent merely to eliminate a potential constitutional conflict."  (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826, quoting *Morey v. Doud* (1957) 354 U.S. 457, 474 (dis. opn. of Frankfurter, J.).)  A challenge to the facial constitutionality of a statute cannot be sustained unless the statutory terms "inevitably pose a present total and fatal conflict with applicable constitutional prohibitions."  (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 181.)

Judge Persky's assertion that the applicable Elections Code provisions are unconstitutional rests on the application of article II, section 14, a provision enacted by Proposition 14 in 1976.  We must examine the text of that constitutional provision, applying the same general principles as those on which statutory construction is based.  (*Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122 (*Thompson*).)  "The aim of constitutional interpretation is to determine and effectuate the intent of those who enacted the constitutional provision at issue.  [Citation.]  To determine that intent, we begin by examining the constitutional text, giving the words their ordinary meanings."  (*Richmond v. Shasta Community Services Dist.*) (2004) 32 Cal.4th 409, 418; *Greene v.*

*Marin County Flood Control & Water Conservation Dist*. (2010) 49 Cal.4th 277, 290 (*Greene*).)

The same rules govern interpretation of constitutional provisions created by voter initiative. (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 444 (*Silicon Valley Taxpayers*); *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 933.) " 'Thus, we begin with the text as the first and best indicator of intent. [Citations.]' " (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 321 (*Kwikset Corp.*).) "If the language is clear and unambiguous, the plain meaning governs." (*Silicon Valley Taxpayers*, *supra*, at p. 444.) On the other hand, if the language is ambiguous, "we consider extrinsic evidence of the enacting body's intent." (*Thompson*, *supra*, 25 Cal.4th at p. 122; *Greene*, *supra*, 49 Cal.4th at p. 290.) If necessary, extrinsic evidence of the voters' intent may include the analysis by the Legislative Analyst and the ballot arguments for and against the initiative. (*Silicon Valley Taxpayers*, *supra*, at pp. 444-445; *Kwikset Corp. supra*, at p. 321; accord, *California Cannabis Coalition*, *supra*, at p. 933.)

To the extent that the constitutional language does not resolve a dispute over its meaning, we may look to the Legislature for its interpretation. Two additional principles guide our inquiry: "First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers [that] are not expressly or by necessary implication denied to it by the Constitution. [Citations.] In other words, 'we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited.' [Citation.] [¶] Secondly, all intendments favor the exercise of the Legislature's plenary authority: 'If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used.' [Citations.]

6

Conversely, a constitutional amendment removing those restrictions and limitations should, in cases of doubt, be construed liberally 'in favor of the Legislature's action.' " (*Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 691, quoting *Fitts v. Superior Court* (1936) 6 Cal.2d 230, 234; see also *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 254, fn. 7 [unlike Congress, which has only the powers expressly granted by the federal Constitution, "the Legislature has all legislative powers except those that are expressly withdrawn from it"].)  These tenets are particularly compelling in this case, as the Legislature has interpreted the relevant provisions of the California Constitution as permitting it to designate superior court judges as local officers when they are the objects of recall petitions.  Judge Persky therefore has a heavy burden to show that the Legislature "missed or misunderstood" the constitutional provisions authorizing the Legislature to prescribe the procedures for certifying and circulating petitions to recall trial court judges.  (Art. II, §§ 16, 19.)[5]

---

[5] The parties debate the significance to be accorded the Secretary's interpretation of the disputed constitutional provisions.  This is not a case involving interpretation of an agency's own quasi-legislative rules or regulations; we therefore do not apply a narrow scope of review, overturning its interpretation only if it is arbitrary, capricious, or irrational.  Instead, where, as here, the agency contributes its interpretation of a statutory or constitutional provision, we regard that interpretation as only the agency's "*legal opinion*, however 'expert,' " which "commands a commensurably lesser degree of judicial deference," even though it "may possess special familiarity with satellite legal and regulatory issues."  (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11.)  In such cases the weight accorded the agency's interpretation is "fundamentally *situational*"; it depends on "complex factors material to the substantive legal issue before it, the particular agency offering the interpretation, and the comparative weight the factors ought in reason to command."  (*Id.* at p. 12.)  We must therefore consider an agency's interpretation as "one among several tools available to the court. Depending on the context, it may be helpful, enlightening, even convincing. It may sometimes be of little worth."  (*Id.* at pp. 7-8.)

*2. Constitutionality of the Statutory Recall Procedure*

Real Parties submitted their petition to the Registrar in accordance with the procedures outlined in division 11, chapter 1, of the Elections Code. To initiate the recall of *any* "elective officer," the proponents (who must be registered voters of the applicable electoral jurisdiction) must serve, file, and publish a notice of intention to circulate a recall petition, in accordance with a prescribed format. (§§ 11006, 11020-11022.) After a copy of the notice of intention is served on the officer, the original must be filed with the elections official—or, in the case of a "state officer," with the Secretary of State. (§ 11021.) The petition itself must comply with specified format and content requirements.[6] (§§ 11040-11043.5.) Once the elections official (or Secretary of State) approves the petition as compliant with all technical and substantive requirements, signatures may be collected from registered voters in the applicable jurisdiction. (§§ 11042, 11045.)

Sections 11001-11005 identify the participants in these initial steps. The proponents of the recall "must be registered voters of the electoral jurisdiction of the officer they seek to recall." (§ 11005.) When the object of the proposed recall is a judge of a trial court, the "elections official" is the "county elections official" (§ 11002), and the "governing board" is the county board of supervisors (§ 11003). At issue in this case are the designations contained in sections 11001 and 11004. Under section 11001, Court of Appeal justices are deemed state officers, whereas "judges of trial courts shall be

---

[6] One of those requirements is a request for an election to name a successor to the recalled officer. The request must instead be for the Governor to appoint a successor *if* the officer to be recalled is a Supreme Court or Court of Appeal justice. (§ 11041, subd. (a)(1).) On appeal, Judge Persky has not renewed his claim that the petition at issue is misleading or inaccurate by failing to request appointment of a successor by the Governor.

considered county officers." A trial court judge is also classified as a "local officer" in section 11004.

The distinction between appellate justices and trial court judges determines the steps that are taken once a recall petition is filed. Sections 11100-11110 pertain to the recall of state officers. In conjunction with the general provisions set forth in chapters 1 and 4 of division 11 of the Elections Code and with article II of the Constitution, those sections prescribe the filing of the petition with the elections official in the county of circulation, the verification of signatures, and the elections official's periodic report to the Secretary of State of the number of verified signatures accumulated to date. (§§ 11102, 11104.) Once a sufficient number of valid signatures have been collected, the Secretary certifies that fact to the Governor, who then must publish notice of the election. (§§ 11109, 11110.)

In the case of a local officer, sections 11220-11227 address the specific requirements for qualification of a recall petition for the ballot, the filing of the petition, the method of ascertaining the number of valid signatures to merit certification to the governing body, and the scheduling of the recall election.

It is clear that the statutory process for initiating and conducting a recall of a "local officer" was expressly made applicable to recall of a superior court judge. Section 11004 states: "For the purposes of this division, a 'local officer' is an elective officer of a city, county, school district, community college district, or special district, *or a judge of a trial court*." (Italics added.) Section 11001 states: "For the purposes of this division, judges of courts of appeal shall be considered state officers, and judges of trial courts shall be considered county officers."

Judge Persky, however, contends that these provisions conflict with the California Constitution. By including superior court judges in the legislative definition of "local" and "county" officer, he argues, the Legislature "appears either to have missed or misunderstood the relevant constitutional provisions." Judge Persky relies specifically on

9

article II, section 14, which states: "(a) Recall of a *State officer* is initiated by delivering to the Secretary of State a petition alleging reason for recall. Sufficiency of reason is not reviewable. Proponents have 160 days to file signed petitions. [¶] (b) A petition to recall a *statewide officer* must be signed by electors equal in number to 12 percent of the last vote for the office, with signatures from each of 5 counties equal in number to 1 percent of the last vote for the office in the county. Signatures to recall Senators, members of the Assembly, members of the Board of Equalization, and *judges of courts of appeal and trial courts* must equal in number 20 percent of the last vote for the office. [¶] (c) The Secretary of State shall maintain a continuous count of the signatures certified to that office." (Italics added.)

It is the italicized words above that are the focus of the parties' dispute. Judge Persky contends that "the plain meaning of the constitutional language at issue clearly and unambiguously classifies trial judges as 'state officers.' " He relies on subdivision (b) of article II, section 14, which specifies the number of signatures necessary to qualify the recall petition for the ballot. In his view, the signatures must equal 12 percent of the last vote for the office in the case of a "statewide" officer, whereas 20 percent is necessary for "*other state officers, including trial judges*."[7]

But article II, section 14, subdivision (b), does not identify trial judges as "other state officers." Its subject is confined to the required number of signatures: Thus, for recall of a statewide officer—one elected to office across multiple subdivisions within the state—the petition must garner signatures amounting to 12 percent, whereas certain other

---

[7] Judge Persky also argues that the superior court "misunderstood the distinction between 'statewide officers' and 'state officers' in article II, section 14." It does appear that the court below misstated Judge Persky's claim as one identifying himself as a *statewide* officer; that mischaracterization, however, is of no consequence to the resolution of the issue before us, whether Judge Persky is a *state* officer under the recall provisions of our Constitution.

officers—identified specifically as senators, assembly members, members of the Board of Equalization, and judges of the Courts of Appeal and trial courts—cannot be removed by recall unless the 20 percent threshold is obtained.

There is no provision in the California Constitution that defines "state officer" to include a superior court judge, either directly or implicitly, for purposes of the state's recall procedure—or, for that matter, for all purposes, even while it is used in a variety of contexts. (See, e.g., art. III, § 8 [defining "state officer" regarding establishment and adjustment of state officer compensation without including members of the judiciary; art. XIII, § 32 [precluding action against state or "any officer thereof" to enjoin collection of tax]; art. IV, § 18 [impeachment of "[s]tate officers elected on a statewide basis . . . and judges of state courts"]; art. III, § 7 [specifically excluding judges in restricting retirement benefits for "elective officer of the state whose office is provided for by the California Constitution"]; art. V, § 14 [judicial offices omitted from list of offices subject to restriction on acceptance of gifts and honoraria by "state officer"].) Nor do we see any intimation of a definition in article II that is contravened by the Legislature's detailed instructions for initiating and conducting recall elections for superior court judges as local officers. Article II, section 16, accords the Legislature the express authority to "provide for circulation, filing, and certification of petitions, nomination of candidates, and the recall election." The Legislature has acted on that authority through the extensive procedures set forth in division 11 of the Elections Code.[8]

---

[8] These extensive procedures belie Judge Persky's assertion that if superior court judges were intended to be classified as local officers, "there would be no need to further instruct the Legislature to 'provide for' recall of local officers [in article II, section 19], because section 14 already 'provides for' recall of the officers listed in that section." Article II, section 14, covers only a small part of the recall process, the delivery of the petition and the number of signatures required for its certification.

Because the plain language of article II, section 14, does not conflict with the recall provisions of the Elections Code, it is unnecessary to delve deeply into the history of that constitutional provision beginning in 1911, notwithstanding Judge Persky's suggestion to the contrary.[9] We do note, however, that when article II, section 14, was added to the Constitution by Proposition 14 in June 1976, it replaced article XXIII, section 2, which had been added by Proposition 9 in 1974.[10] Proposition 14 was itself the product of an Assembly resolution. (Assem. Const. Amendment No. 40, Stats. 1976 (1975-1976 Reg. Sess.) res. ch. 5, pp. 6651-6664, and res. ch. 24, pp. 6682-6683). The 1974 version of former article XXIII contained the identical references to recall of a "State officer" and the same required percentages for "statewide" officers (12 percent) and "judges of courts of appeal and trial courts" (20 percent) as in the current version, subdivision (b) of article II, section 14.[11] (Former art. XXIII, § 2, subd. (b).) Thus, there

---

[9] On appeal Judge Persky maintains that the "express" constitutional language at issue "unambiguously" classifies trial judges as state officers; consequently, "there is no need for construction." Yet he also contends that Judge Tsenin "gave inadequate weight to the history of the recall provisions and their evolution from 1911 to the present."

[10] Proposition 9 was the result of a resolution by the Assembly to propose the repeal and re-enactment of former article XXIII. The proposition was explained to the voters as one intended to clarify the recall procedures, prescribe the required number of signatures, eliminate the six-month period in which the officer is safe from recall, and limit the signature-gathering period to 160 days.

[11] The previous version of article XXIII, section 1, originally in 1911, dictated the procedure to require 12 percent for recall of an "elective public officer," but "if the officer sought to be removed is a state officer who is elected in any political subdivision of the state," 20 percent was required. Judge Persky suggests that by construing subdivisions (a) and (b) of article II, section 14, together, the intent of the voters would be expressed consistently with the 1911 version, recognizing officers elected in the state at large (now "statewide") along with (or, in Judge Persky's view, as distinguished from) state officers elected in a political subdivision of the state. We cannot endorse the premise that the amendments in 1974 and 1976 were intended to set forth the same procedural distinctions in different words. The Legislature and the electorate are presumed to know what they were replacing when they amended article XXIII in 1974.

is no indication that the recall procedures prescribed in former article XXIII, section 2, were intended to be nullified or displaced with the adoption of article II, section 14.

The voters in Proposition 14 also approved article II, section 16, which—like its predecessor, former article XXIII, section 4—directs the Legislature to "provide for circulation, filing, and certification of petitions, nomination of candidates, and the recall election." As noted, the applicable Elections Code provisions, also enacted in 1976 as division 14, were consistent with that mandate. (Former §§ 27000 et seq., Stats. 1976, ch. 1437, p. 6439). Article II, section 19, likewise contains the same language as in former article XXIII, section 7; it delegates to the Legislature the management of the recall of "local officers." We see no indication that when article II, section 19, was adopted in 1976, superior court judges were intended to be an exception to the existing legislative classification of "trial court judges" as "county" or "local" officers.[12]

The Elections Code has evolved consistently with the recall provisions of our Constitution. Before 1974 the Elections Code divided its recall provisions, contained in division 14, into those applicable to state officers (former §§ 27000-27004), county officers (former §§ 27200-27216), and municipal officers. (Former §§ 27500-27521, Stats. 1961, ch. 23, pp. 862-869,). "County officer" was defined to exclude members of the state senate and assembly as well as judicial officers; and the term "judicial officer" encompassed every level from the Supreme Court down to a justice court. (Former §§ 35, 31.) An election could be either statewide ("held throughout the state") or local ("municipal, county, or district"). (Former §§ 27, 28.) State officers were

Evidently they purposefully discarded the language of the 1911 removal provision when they chose to specify the offices to which the 20-percent threshold was to apply.

[12] The predecessor to section 11004 (including trial court judges in the category of "local officer") was former section 27005 (Stats. 1976, ch. 1437, § 4, p. 6439), which contained the identical language as the current provision. The predecessor to section 11001 ("judges of trial courts shall be considered county officers") was former section 27001, which likewise contained the identical language.

recalled according to chapter 1 of division 14 of the Elections Code, without a specific definition of "state officer" for that purpose. (Former §§ 27000-27004.) "County officers" were recalled under chapter 2 of that division (former §§ 27200-27216); it provided for recall of the "holder of any elective office of any county or of any district," where "district" expressly included judicial districts. (Former §§ 27200-27201.) A petition for recall of an elective officer of any county or of any district had to be filed with the "county clerk," which meant "registrar of voters" in counties that had such a title. (Former §§ 17, 27202, Stats. 1961, ch. 23, pp. 583, 862.)

When article II, section 14, was adopted in June 1976, its references to judges of "trial courts" (signatures must equal 20 percent) necessarily encompassed municipal and justice court judges, who indisputably could not have been deemed state officers whose recall had to be initiated under the management of the Secretary of State.[13] Judge Persky contends, however, that municipal and justice court judges were treated differently from those on the superior court bench before the passage of Proposition 9 in 1974. He points out that the pre-1974 Elections Code defined "judicial district" without specifically referring to superior courts, while it did *include* municipal and justice court districts. (Stats. 1961, ch. 23, § 37, p. 584.) Likewise, "Inferior court" was defined to *include* municipal and justice courts. (Stats. 1961, ch. 23, § 38, p. 584.)

---

[13] In 1950 voters passed Proposition 3, which reduced the number of inferior courts from six to two, with municipal courts to occupy districts with a population exceeding 40,000 and justice courts to occupy districts of 40,000 or fewer. In November of 1994, Proposition 191 eliminated the office of justice courts by incorporating them into municipal courts. Then, with the passage of Proposition 220 in June 1998, consolidation of the municipal and superior courts occurred. Thus, trial courts included municipal courts and justice courts when article II, section 14, was adopted in 1976. Like its predecessor, former article XXIII, section 2, article II, section 14, includes subdivision (c), which directs the Secretary of State to maintain an ongoing count of the signatures certified to the office. There is no indication that this obligation was not intended to apply to recall of *all* trial courts, including municipal and justice courts.

Judge Persky's analysis of pre-1974 language defining "judicial district" is not helpful. That the definition of "judicial district" did not explicitly mention superior courts signifies nothing; it only clarified that municipal and justice courts were *included* in that definition. The word "includes" is not synonymous with "means" or "constitutes." Thus, the statutory term clearly did not exclude other districts in which courts sit. It was not unreasonable for the judge in this case to infer that "judicial district" encompassed the districts of all trial courts. (Cf. *Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 735 ["The term 'includes' in a statutory definition does not necessarily exclude things not specified" but "ordinarily is a term of enlargement rather than limitation"].)

Judge Persky suggests, however, that "the Legislature did not mean to include the Supreme Court, Court of Appeal, or Superior Courts in its definition of 'Judicial district' in the pre-1974 Elections Code." Even if that inference is correct, there is no indication that in 1976 the initial steps in the recall process, delineated in the current division 11, chapter 1, of the Elections Code, were intended to distinguish superior court judges from municipal and justice court judges. Nor is there anything significant about the exclusion of superior court judges as judicial officers from the class of "county officer" in the pre-1974 Elections Code; the label "judicial officer" applied to *all* judges and justices at every level of the judiciary, and thus none were deemed county officers. (Stats. 1961, ch. 23, §§ 31, 35, pp. 583-584; Stats. 1967, ch. 17, § 24, p. 833.)

Judge Persky nonetheless discounts the significance of the municipal courts in the state's judicial structure: "The municipal courts came and went after the constitutional recall provisions, and the amendments to the recall provisions do not appear to have taken any notice of them. None of the various iterations of the constitutional recall provisions ever mentioned municipal court judges specifically." This speculative suggestion not only finds no factual support but contravenes the longstanding presumption that "[b]oth the Legislature and the electorate by the initiative process are

15

deemed to be aware of laws in effect at the time they enact new laws and are conclusively presumed to have enacted the new laws in light of existing laws having direct bearing upon them." (*Williams v. County of San Joaquin* (1990) 225 Cal.App.3d 1326, 1332; *People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1067.)

It is worth noting further that in 1994 the Elections Code was reorganized with the purpose of clarifying its provisions. (Stats. 1994 ch. 920, §§ 1-2, p. 4690.) This act did not, however, substantially alter the 1976 recall provisions. Indeed, the Legislature emphasized that "no change made by this act shall be construed to create any new right, duty, or other obligation that did not exist on the effective date of this act, or result in the limitation or termination of any right, duty, or other obligation that existed on the effective date of this act." (Stats. 1994, ch. 920, § 3, p. 5163.) Section 2 of the reorganized law stated, "The provisions of this code, insofar as they are substantially the same as existing statutory provisions relating to the same subject matter, shall be construed as restatements and continuations, and not as new enactments."[14]

*Olson v. Cory* (1980) 27 Cal.3d 532 (*Olson*), on which Judge Persky relies, does not alter our view that the Elections Code provisions for recall of superior court judges withstand constitutional scrutiny. The Supreme Court in that case held that legislation limiting cost-of-living increases in judicial salaries was unconstitutional, as it impaired judges' vested, constitutionally protected contract rights existing before the adoption of

---

[14] SB 1547, the 1994 bill that most recently amended the Elections Code, proposed to "state the intent of the Legislature to reorganize and clarify the Elections Code and thereby facilitate its administration. It would further state the Legislature's intent that the changes made to the Elections Code, as reorganized by this act, have only technical and nonsubstantive effect. This bill would state the finding of the Legislature that the reorganization of the Elections Code pursuant to this act, in view of the nonsubstantive statutory changes made, will not result in new or additional costs to local agencies responsible for the conduct of elections or charged with any duties or responsibilities in connection therewith." (See Legis. Counsel's Dig., Sen. Bill. No. 1547, (1993-1994 Reg. Sess.), 5 Stats. 1994, Summary Dig., p. 360).

16

that legislation. In the course of determining the scope of that protection, the Court cited article III, section 4, which prohibits the reduction of the salaries of "elected state officers" during their term of office. In that specific context, the Court said, "[j]udges are state officers," even though the constitutional provisions it cited did not specifically affirm that proposition. (*Olson*, *supra*, at p. 543.)[15] The Court did not purport to deem trial court judges state officers for all purposes.

*Warden v. Harker* (1931) 212 Cal. 775, also cited by Judge Persky, is likewise of no assistance. In that case the plaintiff brought an action to quiet title to land he had purchased at a tax sale. In appealing from the judgment in favor of the defendant taxpayer, the plaintiff contended that the assignment of the judge from another county violated the constitutional provisions on recall. In one sentence the Supreme Court responded, "Admittedly, the voters of Tulare County could recall the judge, and the voters of Los Angeles County could not; but we are unable to perceive in what manner this affects the jurisdiction of a state officer, a judge of the superior court of the State of California, sitting in any county to which he may be assigned by the chairman of the judicial council in pursuance of the Constitution of this state." (*Id*. at p. 776-777.) The dicta in *Warden* is not helpful in these circumstances.

---

**15** The Supreme Court cited former article VI, section 1 ("The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, and municipal courts . . . .") and article VI, section 16—which, before the unification of the inferior courts, separately prescribed the term and manner of electing judges of the Supreme Court, Courts of Appeal, and "[j]udges of other courts." (Former art. VI, § 16.) Terms of superior court judges were set at six years, while Supreme Court and appellate court justices were to serve 12-year terms. The current article VI, section 16, recognizing the elimination of municipal courts, makes a similar distinction in the manner of election between the Supreme Court and appellate court justices ("elected at large" and "elected in their districts," respectively) and superior court judges "(elected in their counties")" as well as the length of terms (12 years for Supreme Court and appellate court justices; six years for superior court judges).

Finally, we take the view that respect for the statutory framework of the recall process—in particular, the distinction between superior court judges and justices at the Courts of Appeal and Supreme Court—also makes practical sense when applying the procedures set forth in division 11 of the current Elections Code. Under our Constitution, superior court judges are "elected in their counties" and are therefore retained or recalled by voters in those counties. (Art. VI, § 16, subd. (b).) The districts served by the justices of the Courts of Appeal span multiple counties, and, of course, Supreme Court justices are "elected at large," as they serve the entire state. (Art. VI, § 16, subd. (a).)[16] For those justices, the Secretary of State must coordinate the results reported by elections officials in the multiple counties served by those offices. The recall provisions contained in the Elections Code reflect this rational distinction by assigning county elections officials the task of receiving, counting, and verifying signatures of voters within their borders, while the Secretary of State attends to coordination among all the counties within the affected jurisdiction. (§§ 11104-11108.) Requiring the Secretary of State, as the chief elections officer of California,[17] to manage the counting, filing, certification, and circulation of recall petitions for all superior court judges of the 58 counties in addition to his existing duties pertaining to all state officers would amount to an insuperable burden that could

---

[16] As noted above, even before the amendments made by Proposition 14, article VI, section 16, dictated that "Judges of the Supreme Court shall be elected at large and judges of courts of appeal shall be elected in their districts . . . Judges of other courts shall be elected in their counties or districts at general elections." Thus, the Constitution has long made distinctions between trial courts—i.e., superior, municipal, and justice courts—and the higher courts (Supreme Court and Courts of Appeal).

[17] "The Secretary of State is the chief elections officer of the state, and shall administer the provisions of the Elections Code. The Secretary of State shall see that elections are efficiently conducted and that state election laws are enforced. The Secretary of State may require elections officers to make reports concerning elections in their jurisdictions." (Gov. Code, § 12172.5, subd. (a).)

18

not have been contemplated as this state's election laws evolved along with the composition of the judiciary.

Judge Persky finally charges that eliminating superior court judges from the class of "state officer" deprives them of protections all state officers enjoy. He cites, for example, article II, section 18, which permits a state officer who is not recalled to be reimbursed by the state for his or her "recall election expenses legally and personally incurred." He has not shown, however, any such monetary advantage will directly and immediately operate in his case. He also has not shown how sections 11108 and 11324, subdivision (b),[18] support the reclassification of superior court judges, contrary to the explicit, constitutionally authorized direction of the Legislature. (Art. II, § 16.)

We thus conclude that the Legislature did not impermissibly distinguish between appellate courts and superior courts in setting forth the procedures for recall of judicial officers, including their classification as "state" or "local" officers. Through the procedures outlined in section 11001 et seq., the Legislature complied with its constitutional mandate in article II, section 16, to "provide for circulation, filing, and certification of petitions, nomination of candidates, and the recall election," without contravening any other constitutional provisions governing the recall of judicial officers. As currently phrased, article II, section 14, does not clearly classify trial court judges as state officers, but only identifies precisely what offices qualify for the 20-percent

---

[18] Section 11324, subdivision (b), states: "In the case of a recall of a state officer, the official responsible for preparing the voter information guide pursuant to subdivision (a) shall include in the voter information guide the report of estimated costs of the recall prepared by the Department of Finance pursuant to subdivision (d) of Section 11108." As arguably relevant here, section 11108 provides for a 30-day period in which a signature can be withdrawn from the petition, an estimate by the Department of Finance of the costs of the election, a 30-day review by the Joint Legislative Budget Committee, and remittance of the necessary funds to the election official. Both statutes are the product of SB 117, effective August 24, 2017. (Stats. 2017, ch. 180, §§ 11, 13, pp. 2056-2057.)

signature threshold applicable to a recall petition.  We therefore find no constitutional basis on which to delay the processing of the current recall petition in order to compel the Secretary to take over the initial recall procedure from Shannon Bushey, the designated elections official for Santa Clara County voters.

*Disposition*

The order is affirmed.

_____

ELIA, ACTING P. J.

WE CONCUR:



_____

GROVER, J.



_____

DUFFY, J.*




*Persky v. Bushey*
H045129

_____

    *Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                                      Santa Clara County Superior Court
                                                  Superior Court No.:  1-17-CV-314311


Trial Judge:                                      Honorable Kay Tsenin


Counsel for Plaintiff and Appellant:              McManis Faulkner
AARON PERSKY                                      James McManis
                                                  Elizabeth Pipkin
                                                  Christine Peek

                                                  Law Office of Mark S. Rosen
                                                  Mark S. Rosen

Counsel for Respondent:                           James R. Williams, County Counsel
SANTA CLARA COUNTY REGISTRAR OF                   Steve Mitra, Assistant County Counsel
VOTERS                                            Elizabeth G. Pianca, Lead Deputy County Counsel
SHANNON BUSHEY


Counsel for Real Parties in Interest:             Strumwasser & Woocher
MICHELE DAUBER, et al.                            Fredric D. Woocher
                                                  Beverly Grossman Palmer

                                                  Kaufan Legal Group
                                                  George Yin


Counsel for Intervener and Respondent:            Office of the Attorney General
SECRETARY OF STATE                                Xavier Becerra, Attorney General
ALEX PADILLA                                      Aaron Jones, Deputy
                                                  Thomas S. Patterson
                                                  Constance L. LeLouis